**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 13 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

AMERICAN TARGET
ADVERTISING, INC., a Virginia
corporation,

        Plaintiff - Appellant,

        v.

FRANCINE A. GIANI, in her official
capacity as Division Director of the
Utah Division of Consumer Protection,
Department of Commerce for the State
of Utah,

        Defendant - Appellee.

---------------------------

BRUCE W. EBERLE &
ASSOCIATES, INC.; FREE SPEECH
DEFENSE AND EDUCATION
FUND, INC., MIKE HATCH,
MINNESOTA ATTORNEY
GENERAL, ET AL.,

        Amici Curiae.

No. 98-4158

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 97-CV-610-B)**

---

Mark J. Fitzgibbons, American Target Advertising, Inc., Manassas, Virginia

(Gifford W. Price, Mackey, Price & Williams, Salt Lake City, Utah, with him on the briefs), appearing for Appellant.

Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, Utah, appearing for Appellee.

F. Hayden Codding, Codding & Codding, Fairfax Virginia, filed an amicus curiae brief on behalf of Bruce W. Eberle & Associates, Inc.

William J. Olson, John S. Miles, Alan Woll, and John F. Callender, William J. Olson, P.C., McLean, Virginia; Mark B. Weinberg, Weinberg & Jacobs, LLP, Rockville, Maryland; Michael J. Norton, Norton-Lindstone, LLC, Englewood, Colorado; and Herbert W. Titus, Troy A. Titus, P.C., Virginia Beach, Virginia, filed an amicus curiae brief on behalf of the Free Speech Defense and Education Fund, Inc.

Mike Hatch, Attorney General, and Roberta J. Cordano, Assistant Attorney General, State of Minnesota, St. Paul, Minnesota, filed an amicus curiae brief on behalf of Mike Hatch, Minnesota Attorney General, et al.

---

Before TACHA, HOLLOWAY, and BALDOCK, Circuit Judges.

---

TACHA, Circuit Judge.

---

American Target filed this suit against Francine A. Giani in her official capacity as Director of the Utah Division of Consumer Protection. American Target sought declaratory, injunctive, and other relief, asking the district court to hold the Utah Charitable Solicitations Act unconstitutional. On cross motions for summary judgment, the district court granted summary judgment in favor of defendant. American Target filed a timely appeal, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

# I. Background

American Target is a Virginia corporation that provides fundraising services to nonprofit organizations. The corporation is under contract to provide such services to Judicial Watch, Inc., a nonprofit organization located in Washington, D.C. Under this contract, American Target helps manage Judicial Watch's national direct mail campaign.

By virtue of its contract with Judicial Watch, American Target is classified as a professional fundraising consultant under the Utah Charitable Solicitations Act. Utah Code Ann. § 13-22-2(11) (Supp. 1999). The Act requires all professional fundraising consultants to register with the state and obtain a permit. Id. §§ 13-22-5, -9. To obtain the required permit, American Target must complete a written application, pay an annual fee of $250 and post a bond or letter of credit in the amount of $25,000. Id. § 13-22-9.

American Target has not complied with the registration requirements and is therefore barred from assisting Judicial Watch with its mailing in Utah. American Target claims that the Act violates several provisions of the U.S. Constitution, including the First Amendment, the Commerce Clause and the Due Process Clause of the Fourteenth Amendment. We address each constitutional challenge.

## II. First Amendment

The First Amendment provides that government "shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. In a facial challenge, American Target argues that the Utah Act operates both as an impermissible abridgement of protected speech and as an unconstitutional prior restraint. Because nothing in the record indicates that the Act will have any different impact upon interests not before this court, we analyze both prongs of the First Amendment challenge as they are presented under the facts of this case. City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 801-02 (1984). If any provision should fail as applied to American Target, we will then decide if the provision is unconstitutional on its face. To find a provision facially unconstitutional, we must conclude that "any attempt to enforce such legislation would create an unacceptable risk of the suppression of ideas." Id. at 797.

### A. Protected Speech

We review de novo challenges to the constitutionality of a statute. United States v. Hampshire, 95 F.3d 999, 1001 (10th Cir. 1996). In addition, where expressive activity is arguably protected by the First Amendment, this court must make an independent examination of the entire record. Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499 (1984). After such review, we conclude that all but three of the challenged provisions are consistent with the

First Amendment.

Charitable solicitations qualify as protected speech for First Amendment purposes. Village of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 632 (1980). Content neutral regulation of protected speech is subject to "an intermediate level of scrutiny." Turner Broad. Sys., Inc. v. Federal Communications Comm'n, 512 U.S. 622, 642 (1994). The "principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). A measure designed not to "suppress the expression of unpopular views" but rather to control the "secondary" effects of speech will generally be deemed content neutral. Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-48 (1986).

The Utah Act targets the secondary effects of professional solicitations, i.e., increased fraud and misrepresentation. The Act does not authorize a content-based review of the charitable mailings. It simply facilitates oversight of the mailers' backgrounds and methods. Therefore, the Act is content neutral, and we accordingly subject it to intermediate scrutiny. The state must demonstrate that the Act (1) serves a substantial governmental interest and (2) is "narrowly drawn" to serve that interest "without unnecessarily interfering with First Amendment

freedoms." Village of Schaumburg, 444 U.S. at 636-37. [1]

"The interest in protecting charities (and the public) from fraud is, of course, a sufficiently substantial interest to justify a narrowly tailored regulation." Riley v. National Fed'n of the Blind, 487 U.S. 781, 792 (1988). The stated purpose of the Utah Act is "to protect . . . citizens from harmful and injurious acts." Utah Code Ann. § 13-1-1 (1996). The registration and permit provisions require applicants to make detailed disclosure about past activities, including descriptions of any injunction, judgment or administrative order entered against them. Utah Code Ann. § 13-22-9 (Supp. 1999). The grounds for denying a permit center on findings of fraud and misrepresentation. Id. § 13-22-12. The Act's general declarations and specific prohibitions clearly target fraud. The Act therefore serves a substantial government interest.

All of the Act's provisions must be narrowly drawn to serve this recognized governmental purpose. We review those statutory provisions construed by the district court to determine whether the state has narrowly tailored them to prevent

---

[1]American Target contends that we should apply intermediate scrutiny to this content neutral regulation only if we first determine that it is a time, place or manner restriction. The Turner Broadcasting court made no such qualification and we shall not impose one here. In fact, the Supreme Court has suggested that there is no meaningful distinction between evaluation of a content neutral regulation of expressive conduct and a content neutral time, place or manner restriction. Clark v. Community for Creative Non-Violence, 468 U.S. 288, 298 (1984) (observing that the test applied to expressive conduct "in the last analysis is little, if any, different from the standard applied to time, place or manner restrictions").

fraud.

1. <u>Registration and Disclosure Requirements</u>

The Act requires professional fundraising consultants like American Target to meet certain registration and disclosure requirements. Consultants must identify those involved in the solicitation process, disclose the purpose and method of solicitation, declare the existence of any injunctions, judgments, administrative orders, or criminal convictions involving moral turpitude, and provide copies of all agreements concerning fundraising. <u>Id</u>. § 13-22-9.

The Supreme Court has indicated that registration and disclosure provisions do not raise First Amendment problems. In <u>Secretary of State v. Munson</u>, 467 U.S. 947, 968 n.16 (1984), the Court recognized that "concerns about unscrupulous professional fundraisers, like concerns about fraudulent charities, can and are accommodated directly, through disclosure and registration requirements and penalties for fraudulent conduct." In <u>Riley</u>, the Court stressed that the state "may constitutionally require fundraisers to disclose certain financial information." <u>Riley</u>, 487 U.S. at 795. The <u>Riley</u> court further found that "the State may itself publish the detailed financial disclosure forms it requires professional fundraisers to file." <u>Id</u>. at 800.

Mandatory registration and disclosure enable Utah citizens to make informed decisions concerning their charitable donations. These requirements

directly promote Utah's legitimate interest in combating fraud while not unnecessarily interfering with solicitors' protected speech. We find that the registration and disclosure provisions of the Utah Act are narrowly tailored to serve the state's substantial interest in fighting fraud.

2. Registration Fee

The Utah Act also requires fundraising consultants to pay an annual registration fee. The fee imposed must be "reasonable, fair and reflect the cost of services provided." Utah Code Ann. § 63-38-3.2(2)(a) (Supp. 1999); Utah Code Ann. § 13-22-9(1)(a) (Supp. 1999). Prior to fiscal year 1997, the state assessed a fee of $150. The Utah Division of Consumer Protection raised the fee to $250 for fiscal year 1997 and thereafter. In an affidavit filed with the district court, Director Giani stated that the Division raised the fee to defray increased regulatory costs caused by a significant jump in applications.

Arguing that the $250 fee is excessive, American Target relies almost exclusively upon Murdock v. Pennsylvania, 319 U.S. 105 (1943). In Murdock, the Supreme Court struck a city ordinance that, as applied, required Jehovah's Witnesses to pay a license tax to engage in door-to-door solicitation. The Court declared that "[f]reedom of speech . . . [should be] available to all, not merely to those who can pay their own way." Id. at 111. The Court recognized some limits to this principle, however. Cataloguing the failings of the license tax at issue, the

Court observed that it was not "a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question." Id. at 113-14. The Court observed that "[t]he constitutional difference between such a regulatory measure and a tax on the exercise of a federal right has long been recognized." Id. at 115 n.8.

Murdock "does not mean that an invalid fee can be saved if it is nominal, or that only nominal charges are constitutionally permissible." Forsyth County v. Nationalist Movement, 505 U.S. 123, 137 (1992). Rather, a regulatory fee may be constitutional only if it serves a "legitimate state interest." Id. The state of Utah, through the Giani affidavit, adequately connects the $250 regulatory fee to the state's recognized interest in protecting its citizenry from fraud. The fee does no more than defray reasonable administration costs. We therefore find the fee narrowly tailored to the identified interest.

### 3. Bond or Letter of Credit

To obtain a permit under the Act, American Target must also provide proof that it is bonded or provide a letter of credit in the amount of at least $25,000. Utah Code Ann. § 13-22-9(4)(a). The statute requires that the bond or letter of credit "be payable to the state for the benefit of parties who may be damaged by any violation of this chapter." Id. § 13-22-9(4)(b).

The district court relied upon Dayton Area Visually Impaired Persons v.

Fischer , 70 F.3d 1474 (6th Cir. 1995), to uphold the bonding provision.

In Dayton Area , the Sixth Circuit affirmed a district court's holding that a $25,000 surety bond requirement under the Ohio Charitable Solicitations Act was narrowly tailored to serve a legitimate state interest. Id. at 1486. Significantly, the Dayton Area court reviewed a district court's partial grant and partial denial of a preliminary injunction. This procedural posture limited the nature of the First Amendment analysis and limited the court to an abuse of discretion review. In our de novo review, we must decide as a matter of law whether the $25,000 bond is narrowly tailored to the identified state interest. Dayton Area is therefore inapposite.

The bond requirement, on its face, supports a different state interest than the other challenged provisions of the Act. The disclosure and fee requirements enable prophylactic oversight of professional fundraisers. The bond requirement provides a victim relief fund for those injured through violations of the Act. When a professional fundraiser violates the Act, the state naturally expects the violator to satisfy a tort judgment. But this interest in redress applies across the law in other tort contexts. More importantly, this interest is adequately served by the preventive measures within the Act. Extensive disclosure and vigorous oversight diminish the likely need for a victim compensation fund. An ounce of prevention here is preferable to a pound of cure.

-10-

The actual impact of the bond requirement supports our conclusions. The president of American Target, in a sworn affidavit, stated that the company must provide 100 percent collateral for the amount of any outstanding bond. The company does not have enough unpledged collateral on hand to secure the Utah bond and must borrow the full amount. Id. The requirement therefore imposes a sizeable price tag upon the enjoyment of a guaranteed freedom. Bonding may peripherally promote Utah's interest in regulatory oversight, but this goal is "sufficiently served by measures less destructive of First Amendment interests." Village of Schaumburg, 444 U.S. at 636. Through the registration, disclosure and fee requirements, the statute provides less intrusive means of fraud prevention. The chilling financial reality of the bond "unnecessarily interfer[es] with First Amendment freedoms," id. at 637, and is therefore unconstitutional as applied.

Having found the bond provision unconstitutional as applied to American Target, we now must decide whether any attempt to enforce this provision would create "an unacceptable risk of the suppression of ideas." Taxpayers for Vincent, 466 U.S. at 797. We find that it would. There is evidence in the record that qualifying for a letter of credit is much like qualifying for a loan. While some consultants may qualify for the required letter without 100 percent collateral, this possibility does not save the provision. We are not prepared to allow the constitutionality of this requirement turn on the applicant's credit rating.

Furthermore, any posted collateral would go to support victim recovery. We have already found that the guarantee of victim relief only peripherally supports the recognized state interest in regulatory oversight. The chilling impact of the bond upon protected speech outweighs any fraud protection it might provide. We therefore find that the bond/letter of credit provision of the Utah Act is unconstitutional on its face.

**B. Severability**

Having found one part of the Act unconstitutional, we must decide whether the objectionable provision can be severed. Severability is an issue of state law. Leavitt v. Jane L., 518 U.S. 137, 139 (1996) (per curiam). In Utah, the test is "whether the legislature would have passed the statute without the objectionable part . . . . Frequently the courts are aided in the determination of legislative intent by the inclusion within a statute of a 'saving clause.'" Stewart v. Utah Pub. Serv. Comm'n, 885 P.2d 759, 779 (Utah 1994) (quoting Union Trust Co. v. Simmons, 211 P.2d 190, 193 (Utah 1949)).

There is no saving clause in the Utah Act to aid our interpretation. Therefore, we must look to whether the statutory provisions "are so dependent upon each other that the court should conclude the intention was that the statute be effective only in its entirety." Id. The bonding/letter of credit requirement is not interrelated in any meaningful sense with the remainder of the Act. Indeed,

on its face, the bonding requirement articulates a different purpose than do the other provisions. Elimination of the bonding requirement therefore will not frustrate the Act's stated purpose. Accordingly, we find that it is severable under Utah law.

## C. Prior Restraint

American Target also claims that the Act operates as an impermissible prior restraint upon protected speech. A scheme of prior restraint gives "public officials the power to deny use of a forum in advance of actual expression." Southeastern Promotions Ltd. v. Conrad, 420 U.S. 546, 553 (1975). American Target is barred from aiding any solicitations within the state until it complies with all the Act's requirements. Utah Code Ann. § 13-22-6(1)(b)(xiv)(B) (Supp. 1999). The Act therefore definitionally qualifies as a prior restraint. Because we have struck the bonding requirement, we consider only whether the other challenged provisions establish an unconstitutional prior restraint.[2]

"Prior restraints are not unconstitutional per se." Southeastern Promotions, 420 U.S. at 558. However, "[a]ny system of prior restraint . . .

---

[2]Much of the prior restraint law developed in the context of ordinary licensing and zoning schemes. None of the schemes we encountered carried a restraint like the bonding requirement under the Utah Act. Having already found that requirement an unconstitutional burden upon free speech, we do not address how such a restraint would affect our analysis here. We simply note that so substantial a bonding requirement might operate as a full restraint where applicants cannot muster the required collateral.

comes to [the] Court bearing a heavy presumption against its constitutional validity." Id. (internal quotation marks and citation omitted). In particular, there are "two evils" that will not be tolerated in such schemes. FW/PBS, Inc. v. Dallas, 493 U.S. 215, 225 (1990). First, no system of prior restraint may place "'unbridled discretion in the hands of a government official or agency.'" Id. (quoting Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 757 (1988)). Second, "a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." Id. at 226.

1. Unbridled Discretion

a) § 13-22-9(1)(b)(xiv)

American Target contends that state officials enjoy too much discretion over the administrative process. The Director of the Division of Consumer Protection has the power to deny, suspend or revoke an application, registration, permit or information card. Utah Code Ann. § 13-22-12(1). To exercise this power, the director must find that such action serves the "public interest" and that the regulated entity has violated one or more of thirteen grounds set forth in the statute. Id.[3] These grounds include, among others, the filing of an application

_____

[3] Section 13-22-12 (1) provides in full:
(1) The director may, in accordance with Title 63, Chapter 46b, Administrative Procedures Act, issue an order to deny, suspend, or revoke an application, registration, permit, or information card, upon a finding that the order is in the public interest and that:

that is "incomplete or misleading in any material respect." Id. § 13-22-12(1)(a).

The Act also contains a list of specific information which must be included in any

---

> (a) the application for registration or renewal is incomplete or misleading in any material respect;
> (b) the applicant or registrant or any officer, director, agent, or employee of the applicant or registrant has:
>> (i) violated this chapter or committed any of the prohibited acts and practices described in this chapter;
>> (ii) been enjoined by any court, or is the subject of an administrative order issued in this or another state, if the injunction or order includes a finding or admission of fraud, breach of fiduciary duty, material misrepresentation, or if the injunction or order was based on a finding of lack of integrity, truthfulness, or mental competence of the applicant;
>> (iii) been convicted of a crime involving moral turpitude;
>> (iv) obtained or attempted to obtain a registration or a permit by misrepresentation;
>> (v) materially misrepresented or caused to be misrepresented the purpose and manner in which contributed funds and property will be used in connection with any solicitation;
>> (vi) caused or allowed any paid solicitor to violate any rule made or order issued under this chapter by the division;
>> (vii) failed reasonably to supervise his agents, employees, paid solicitors or, in the case of an organization, its professional fund raisers or professional fund raising counsels or consultants;
>> (viii) used, or attempted to use a name that either is deceptively similar to a name used by an existing registered or exempt charitable organization, or appears reasonably likely to cause confusion of names;
>> (ix) failed to timely file with the division any report required in this chapter or by rules made under this chapter; or
>> (x) failed to pay a fine imposed by the division in accordance with Section 13-22-3;
> (c) a professional fund raiser or professional fund raising counselor or consultant does not have a bond or letter of credit in force as required by Subsection 13-22-9(4); or
> (d) the applicant for registration or renewal has no charitable purpose.

-15-

application.  Id. § 13-22-9.[4]  The director retains the authority to request "any

additional information the division may require."  Id. § 13-22-9(1)(b)(xiv).

---

[4] Section 13-22-9 provides, in relevant part:

(1) It is unlawful for any person or entity to act as a professional fund raiser or professional fund raising counsel or consultant, whether or not representing an organization exempt from registration under Section 13-22-8, without first obtaining a permit from the division by complying with all of the following application requirements:

> (a) pay an application fee as determined under Section 63-38-3.2; and
> (b) submit a written application, verified under oath, on a form approved by the division that includes:
>> (i) the applicant's name, address, telephone number, facsimile number, if any;
>> (ii) the name and address of any organization or person controlled by, controlling, or affiliated with the applicant;
>> (iii) the applicant's business, occupation, or employment for the three-year period immediately preceding the date of the application;
>> . . . .
>> (ix) disclosure of any injunction, judgment, or administrative order against the applicant or the applicant's conviction of any crime involving moral turpitude;
>> (x) a copy of any written agreements with any charitable organization;
>> (xi) the disclosure of any injunction, judgment, or administrative order or conviction of any crime involving moral turpitude with respect to any officer, director, manager, operator, or principal of the applicant;
>> (xii) a copy of all agreements to which the applicant is, or proposes to be, a party regarding the use of proceeds;
>> (xiii) an acknowledgment that fund raising in the state will not commence until both the professional fund raiser or professional fund raising counsel or consultant and the charity, its parent foundation, if any, are registered and in compliance with this chapter; and
>> (xiv) any additional information the division may require.

-16-

American Target contends that this catch-all provision confers unbridled discretion upon the director: she may demand any piece of information from an applicant and lawfully deny a permit if the applicant refuses such request. We agree.

The state may not condition protected speech "upon the uncontrolled will of an official -- as by requiring a permit or license which may be granted or withheld in the discretion of such official." Staub v. City of Baxley, 355 U.S. 313, 322 (1958). "'[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.'" Forsyth County v. Nationalist Movement , 505 U.S. 123, 131 (1992)  (quoting Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150-51 (1969)).

In a facial challenge to a city licensing scheme, the Supreme Court considered a catch-all provision that authorized the imposition of  "other terms and conditions deemed necessary and reasonable by the Mayor." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 754 & n.2 (1988) (internal quotation marks and citation omitted). The Court held that this section of the statute was unconstitutional on its face because it presumed that the mayor would "act in good faith and adhere to standards absent from the ordinance's face." Id. at 770. "The doctrine [forbidding unbridled discretion] requires that the limits

the city claims are implicit in its law be made explicit by textual incorporation."

Id. Like the catch-all provision in City of Lakewood, § 13-22-9(1)(b)(xiv)

confers unconstitutional discretion on the director because it presumes that she

will use her blanket authority to request additional information only in good faith

and consistent with implicit standards. As a result, § 13-22-9(1)(b)(xiv)

threatens to overwhelm the narrow and objective provisions that precede it. Cf.

Beal v. Stern, 184 F.3d 117, 126 n.6 (2d Cir. 1999) ("The existence of standards

does not in itself preclude a finding of unbridled discretion, for the existence of

discretion may turn on the looseness of the standards or the existence of a

condition that effectively renders the standards meaningless as to some or all

persons subject to the prior restraint.").

We therefore hold that § 13-22-9(1)(b)(xiv), construed in light of the

director's authority to deny an incomplete application, is unconstitutional on its

face and we sever it from the Act.[5] Any attempt by the state to invoke this

blanket authority "would create an unacceptable risk of the suppression of ideas."

---

[5] Utah law on severability, see supra Part II.B., requires us to sever this unconstitutional provision. We must decide "whether the remaining sections [of the statute], standing alone, will further the legislative purpose." Stewart, 885 P.2d at 779. The remaining provisions mandate disclosure of an applicant's biographical, financial and criminal background along with copies of relevant agreements. This disclosure enables the state oversight necessary to achieve the Act's stated purpose of "protect[ing] . . . citizens from harmful and injurious acts." Utah Code Ann. § 13-1-1.

Taxpayers for Vincent, 466 U.S. at 797.

b) § 13-22-12(1)(b)(vii)

Section 13-22-12(1)(b)(vii) authorizes the state to deny a permit if the applicant has "failed reasonably to supervise his agents, employees, paid solicitors or, in the case of an organization, its professional fund raisers or professional fundraising counsels or consultants." Instead of providing "narrow, objective and definite standards to guide the director," Shuttlesworth, 394 U.S. at 150-51, this provision imposes a vague requirement: the applicant must "reasonably . . . supervise" its agents and employees. Nowhere does the statute define or limit the nature of such supervision. "Imprecise language may vest authorities with the discretion to determine which groups and individuals are entitled to exercise First Amendment rights." Association of Community Orgs. for Reform Now v. Municipality of Golden, 744 F.2d 739, 747 (10th Cir. 1984).

Given the placement of this provision within the statutory text, we can only speculate as to a limiting construction. Perhaps the provision is designed to merely punish the applicant if an agent or employee violates the Act under his failed supervision. However, we decline to read words into the statute that the Utah Legislature did not ratify. The state must make explicit the necessary limits to the director's discretion. As enacted, § 13-22-12(1)(b)(vii) also confers

unbridled discretion on the state and therefore is unconstitutional on its face.[6]

2. Time Limits

Time limits upon a prior restraint allay "the risk of indefinitely suppressing permissible speech." FW/PBS, 493 U.S. at 227. In evaluating a facial challenge to a state act, we must consider the state's own construction of the act, including its implementation and interpretation. Forsyth County, 505 U.S. at 131 (1992). The state, by regulation, requires that all initial applications and renewals of registration be processed within ten days of their receipt by the Division of Consumer Protection. Utah Admin. Code R152-22-3(4) (WESTLAW through July 1999). American Target claims that the ten-day delay for administrative processing is unconstitutionally lengthy.

In Freedman v. Maryland, 380 U.S. 51, 58-60 (1965), the Supreme Court held that any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained.[7] Here, the restraint

---

[6] Based on the foregoing analysis of severability, we also find this provision severable from the statute as a whole.

[7] The Freedman court also found that prompt judicial review must be available and that the licensor must bear the burden in court to suppress the protected speech. Freedman, 380 U.S. at 58-59; see also FW/PBS, 493 U.S. at 227 (summarizing the Freedman factors).

The modern interpretation of these Freedman safeguards has provoked some confusion among the circuits. See, e.g., Baby Tam & Co. v. City of Las Vegas, 154 F.3d 1097, 1101 (9th Cir. 1998) (summarizing the circuit split over the meaning of prompt judicial review); 11126 Baltimore Blvd., Inc. v. Prince George's County, 58 F.3d 988, 996 n.12 (4th Cir. 1995) (en banc) (concluding

-20-

imposed prior to judicial review is both clearly specified and brief.  Upon denial

of an initial or renewal application, the applicant is entitled to an administrative

hearing within five business days.  Utah Admin. Code R152-22-11(2).

Administrative determinations must then be issued within five business days of

the hearing.  Id.

In addition, the state maintains the status quo during administrative review.

The status quo for a new applicant like American Target is non-operation.  See

East Brooks Books, Inc. v. City of Memphis, 48 F.3d 220, 225 (6th Cir. 1995)

(status quo for business seeking permit is non-operation); TK's Video, Inc. v.

Denton County, 24 F.3d 705, 708 (5th Cir. 1994) (applicant not free to operate

while license is pending).  Thus, Utah's restraint of American Target during the

brief period of administrative review is constitutional.

### III.  Commerce Clause

American Target also claims that the Act as applied places an undue burden

upon interstate commerce.  We disagree.  We review American Target's

---

that the splintered opinions in FW/PBS leave the burden of proof safeguard
"subject to some speculation").  In its briefs, American Target makes only stray
references to the Act's impact on judicial relief.  We find such references
insufficient to trigger appellate review and therefore do not address the scope of
judicial relief necessary under Freedman.  See Murrell v. Shalala, 43 F.3d 1388,
1390 n.2 (10th Cir. 1994) (finding that a "few scattered statements" in plaintiff's
argument "fail[ed] to frame and develop an issue sufficient to invoke appellate
review").

Commerce Clause challenge de novo.   United States v. Hampshire  , 95 F.3d 999, 1001 (10th Cir. 1996).  The Commerce Clause not only empowers Congress to "regulate Commerce . . . among the several States," U.S. Const. art I, § 8, cl. 3, but also "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce,"   Oregon Waste Sys. v. Dep't of Envtl. Quality  , 511 U.S. 93, 98 (1994). This implied restraint upon the states is often referred to as the negative or "dormant" aspect of the Commerce Clause.

To evaluate a dormant Commerce Clause challenge, this court must first determine whether the act in question "regulates evenhandedly" among economic interests or instead "discriminates against interstate commerce" either on its face or in practical effect.   Oregon Waste Sys.  , 571 U.S. at 99 (quoting   Hughes v. Oklahoma , 441 U.S. 322, 336 (1979)).  Discrimination in this context "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."   Id.  The Utah Act plainly does not distinguish between in-state and out-of-state businesses.  American Target's status as a Virginia corporation doing business in Utah is legally irrelevant.  It is American Target's status under the Act as a professional fundraising consultant that triggers the licensing requirements.

Because the Act regulates evenhandedly among in-state and out-of-state consultants, this court must balance various interests in the constitutional

assessment. The Act must be upheld if it serves a "legitimate public interest," its effects on interstate commerce are only "incidental," and the burden imposed on interstate commerce is not "clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc. , 397 U.S. 137, 142 (1970). The party challenging a statute that regulates evenhandedly bears the burden of proving the statute's excess. Dorrance v. McCarthy , 957 F.2d 761, 763 (10th Cir. 1992).

As discussed previously, the Supreme Court has recognized the public interest in curtailing fraudulent solicitations. Riley , 487 U.S. at 792; Village of Schaumburg , 444 U.S. at 637. Because we have found that the bond is an unconstitutional burden upon free speech, the $250 fee, along with the registration and disclosure requirements, remain for our consideration. Since the Act applies to all fundraising consultants who operate within Utah, its provisions certainly burden interstate commerce for out-of-state firms like American Target. However, the burden is minimal. Thus, we must consider whether the identified public purpose could "be promoted as well with a lesser impact on interstate activities." Pike , 397 U.S. at 142. In its legitimate campaign against fraudulent solicitations, the state would be severely hampered if allowed only to regulate in-state solicitors. Therefore, we find that the burdens the Act imposes on interstate commerce are incidental and not clearly excessive in relation to the legitimate public interest.

-23-

American Target contends that another line of Commerce Clause authority applies to this case. Citing National Bellas Hess, Inc., v. Department of Revenue, 386 U.S. 753 (1967), and Quill Corp. v. North Dakota, 504 U.S. 298 (1992), American Target identifies a bright-line rule prohibiting the regulation of interstate commerce where the regulated entity's only connection to the state is by common carrier or the U.S. mails. Both Bellas Hess and Quill concern the levy of taxes upon out-of-state entities. The Supreme Court in Quill repeatedly stressed that it was preserving Bellas Hess' bright-line rule "in the area of sales and use taxes." Quill, 504 U.S. at 316; see also id. at 311 (" Bellas Hess . . . stands for the proposition that a vendor whose only contacts with the taxing State are by mail or common carrier lacks the 'substantial nexus' required by the Commerce Clause."); id. at 317 ("[O]ur reasoning . . . does not compel that we now reject the rule that Bellas Hess established in the area of sales and use taxes."). The Utah Act imposes licensing and registration requirements, not tax burdens. The Bellas Hess/Quill bright-line rule is therefore inapposite.

## IV. Due Process

Finally, American Target submits that the Utah Act as applied confers state jurisdiction in a manner inconsistent with due process. Again, we disagree.

The Due Process Clause of the Fourteenth Amendment requires that no state "deprive any person of life, liberty, or property, without due process of law

-24-

. . . ." U.S. Const. amend. XIV, §1.  Judicial jurisdiction cannot extend to an individual consistent with due process unless "he have certain minimum contacts [with the jurisdiction] . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe v. Washington , 326 U.S. 310, 316 (1945) (quoting  Milliken v. Meyer , 311 U.S. 457, 463 (1940)).  The Supreme Court has tailored this jurisdictional principle to the corporate context.  "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."  Burger King v. Rudzewicz , 471 U.S. 462, 476 (1985) (quoting  Keeton v. Hustler Magazine, Inc. , 465 U.S. 770, 774-75 (1984)).

In its agreement with Judicial Watch, American Target promises to suggest lists of potential Utah donors, design targeted mailings, help select optimum dates for mailing, and act as a general consultant concerning the solicitation process.  To fulfill its obligations under this agreement, American Target must purposefully direct efforts toward residents of the state.  Therefore, jurisdiction can be asserted consistent with due process.

Without apparent authority, American Target claims that there must be a higher level of business activity to support the legislative or regulatory jurisdiction asserted here.  Charting the due process limits on legislative

jurisdiction, the Supreme Court has employed language reminiscent of that used in the personal jurisdiction caselaw. "There must be at least some minimal contact between a State and the regulated subject before it can, consistently with the requirements of due process, exercise legislative jurisdiction." Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 315 n.2 (1970) (Harlan, J., dissenting). See generally Adventure Communications v. Kentucky Registry of Election Fin., 191 F.3d 429, 437 (4th Cir. 1999) (concluding that "although not identical, judicial and legislative jurisdiction are determined pursuant to like guidelines") If there is a distinction to be drawn between the two inquiries, it is not one necessary to the disposition of this matter. American Target has sufficiently satisfied either formulation of minimum contacts to support Utah's assertion of regulatory jurisdiction.

For the reasons discussed above, we AFFIRM in part and REVERSE in part. In addition, we deny the outstanding motion by Appellant American Target to strike the brief of amici curiae Mike Hatch, Minnesota Attorney General, et al., and grant the motion for leave to respond.