FILED
United States Court of Appeals
Tenth Circuit

December 1, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOHN DOE,

        Plaintiff-Appellant,

v.

MARK SHURTLEFF, Office of the
Attorney General for the State of
Utah, in his official capacity,

        Defendant-Appellee.

No. 09-4162

---

**ORDER**

---

Before **GORSUCH**, **McKAY**, and **CUDAHY**[*], Circuit Judges.

---

This matter is before the court on Appellant's *Petition For Panel Rehearing And Rehearing En Banc*. Panel rehearing is granted for the limited purpose of correcting the decision filed originally on October 26, 2010. The revised opinion, filed nunc pro tunc to the original filing date, is attached. The request for panel rehearing is otherwise denied.

The petition for rehearing en banc was transmitted to all of the judges of

---

[*] Honorable Richard D. Cudahy, Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

the court who are in regular active service.  As no member of the panel and no judge in regular active service on the court requested that the court be polled, that petition is also denied.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

FILED
United States Court of Appeals
Tenth Circuit

October 26, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JOHN DOE,

        Plaintiff-Appellant,

v.

MARK SHURTLEFF, Office of the
Attorney General for the State of
Utah, in his official capacity,

        Defendant-Appellee.

No. 09-4162

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 08-CV-00064-TC)

Elizabeth G. Eager (Emmet J. Bondurant, II, and Nicole G. Iannarone with her on
the briefs), of Bondurant, Mixson & Elmore, LLP, Atlanta, GA, for
Plaintiff–Appellant.

Nancy L. Kemp, Assistant Utah Attorney General (Sharel S. Reber, Assistant
Utah Attorney General, and Mark L. Shurtleff, Utah Attorney General, with her
on the brief), Salt Lake City, UT, for Defendant–Appellee.

Before **GORSUCH**, **McKAY**, and **CUDAHY**[*], Circuit Judges.

**McKAY**, Circuit Judge.

---

[*] Honorable Richard D. Cudahy, Circuit Judge, United States Court of
Appeals for the Seventh Circuit, sitting by designation.

In this case John Doe, a registered sex offender living in the state of Utah, appeals the district court's decision to allow enforcement of a Utah statute requiring all sex offenders living in Utah to register their "internet identifiers" and the corresponding websites with the state. We now uphold that decision based on our conclusion that the statute does not violate the First or Fourth Amendments or the Ex-Post Facto Clause of the United States Constitution, made applicable to Utah through the Fourteenth Amendment.

## BACKGROUND

Appellant, proceeding anonymously as Mr. John Doe, was convicted by the United States military court system of sex offenses involving a minor and sentenced to eighteen months' imprisonment. After serving thirteen months of this sentence, Mr. Doe was released without being placed on probation or supervised release. However, as a resident of Utah and a convicted sex offender, Mr. Doe was still required to register with the Utah Department of Corrections, pursuant to Utah Code Ann. § 77-27-21.5 (West 2008). Among its many provisions, this registry law required Mr. Doe to provide all "Internet identifiers[1] and the addresses [he] uses for routing or self-identification in Internet

---

[1] The statute defined "online identifier" as "any electronic mail, chat, instant messenger, social networking, or similar name used for Internet communication." *Id.* § 77-27-21.5(1)(j).

communications or postings." *Id.* § 77-27-21.5(14)(i).[2] The statute also required

that Mr. Doe provide "all online identifiers and passwords used to access"

websites where he was using an online identifier, with the exception of identifiers

used for employment or financial accounts. *Id.* § 77-27-21.5(12)(j) & (29).

Believing that these requirements violated his First and Fourth Amendment

rights as well as the Ex Post Facto Clause of the United States Constitution, Mr.

Doe refused to provide the requested information and brought a lawsuit

challenging the law. Upon Mr. Doe's motion for summary judgment, the district

court invalidated the statute based on its conclusion that the statute, which

provided "no restrictions on how the [State] c[ould] use or disseminate

registrants' internet information," improperly infringed on Mr. Doe's First

Amendment right to anonymous speech. (Appellant's App. at 208.) Shortly after

this ruling, the Utah legislature amended the statute. First, the legislature

removed any requirement that offenders disclose their passwords, and second, it

placed some limits on how a state official can use identifiers provided by an

offender. Specifically, the statute now[3] provides that

---

[2]This provision is now located in subsection (14)(i), pursuant to changes in the statutory structure made shortly after the district court's ruling.

[3] In addition to the amendment made shortly after the district court's ruling, the Utah legislature has made several more recent changes to section 77-27-21.5, including changes that went into effect after the parties had filed their briefs. Accordingly, we here cite to Utah's current code, and not to the statute as it existed at the time the parties submitted their arguments.

The [state], to assist in investigating kidnapping and sex-related crimes, and in apprehending offenders, shall:
  (a) develop and operate a system to collect, analyze, maintain, and disseminate information on offenders and sex and kidnap offenses;
  (b) make information listed in Subsection (27) available to the public; and
  (c) share information provided by an offender under this section that may not be made available to the public under Subsection (27), but only:
      (i) for the purposes under this Subsection (2); or
      (ii) in accordance with Section 63G-2-206.

Utah Code Ann. § 77-27-21.5(2) (West Supp. 2010). Additionally, the legislature amended Utah's Government Records Access and Management Act, or GRAMA, to designate certain information provided by an offender, including internet identifiers, as private.[4] *See id.* § 63G-2-302(1)(m).

Following these amendments, the State filed a motion for the district court to vacate its earlier order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. After considering the briefs, the district court granted the motion, holding that the new restrictions "diminished" the chilling effect on Doe's speech so that his First Amendment right to anonymous speech was no longer "significantly threatened." (Appellant's App. at 292.) The court then concluded

---

[4] Information designated as "private" by GRAMA may only be disclosed in limited circumstances such as when requested by the subject of the record, or pursuant to a court order or legislative subpoena. *See* Utah Code Ann. §§ 63G-2-201(5) (West Supp. 2010); *id*. § 63G-2-202. Additionally, the statute permits information sharing between different government entities and their agents but places "an entity receiving the record" under "the same restrictions on disclosure of the record as the originating entity." *Id*. § 63G-2-206.

-4-

that the statute did not violate the Fourth Amendment because Mr. Doe had failed to show he had a reasonable expectation of privacy in his internet identifiers, which are communicated to a third party. Finally, the court held, relying on our earlier decision in *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000), that the registry statute did not violate the Ex Post Facto Clause. Mr. Doe now appeals each of these rulings.

## DISCUSSION

We generally review a decision to grant a Rule 60(b) motion for an abuse of discretion. *See Subblefield v. Windsor Capital Grp.*, 74 F.3d 990, 994 (10th Cir. 1996). Nevertheless, we review the district court's decision de novo where, as here, the district court granted relief as a matter of law. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 727 (10th Cir. 1993) ("A district court would necessarily abuse its discretion if it based its rulings on an erroneous view of the law . . . .").

*1. Mr. Doe's claim under the First Amendment*

We first consider Mr. Doe's contention that Utah's registration statute violates his First Amendment right to engage in anonymous speech. In *McIntyre v. Ohio Elections Commission*, the Supreme Court held that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." 514 U.S. 334, 342 (1995). As the Supreme Court

explained, "Anonymity is a shield from the tyranny of the majority. It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." *Id.* at 357 (citation omitted). The Supreme Court has also made clear that First Amendment protections for speech extend fully to communications made through the medium of the internet. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) (explaining that the internet allows "any person with a phone line [to] become a town crier with a voice that resonates farther than it could from any soapbox" and that "our cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium").

In spite of these protections, however, a state may permissibly infringe upon this right when its interest is important enough and the law is appropriately tailored to meet the stated interest. *See Am. Constitutional Law Found., Inc. v. Meyer*, 120 F.3d 1092, 1102 (10th Cir. 1997). In evaluating these interests, the Supreme Court has suggested a distinction between the mandatory disclosure in public of a speaker's identity and the requirement that a speaker provide information to the government that could later be used to trace speech back to its source. In *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999), the Court distinguished between a provision that required petition circulators to wear name badges and a provision that required circulators to file

with the state affidavits including their names and addresses. The Court held that the former provision unconstitutionally burdened speech because it compelled identification "at the precise moment when the circulator's interest in anonymity is greatest." *Id.* at 199. In contrast, the affidavit requirement affected anonymity only after the conversations were complete, "exemplif[ying] the type of regulation for which *McIntyre* left room." *Id.* at 200.

According to Mr. Doe, we should view Utah's statute as a content-based restriction, subject to the strictest of scrutiny, because it has the effect of taking "away [Mr.] Doe's right to choose whether to speak anonymously or under a pseudonym." (Appellant's Br. at 10.) We are not persuaded. "The principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir. 2000) (internal quotation marks and ellipsis omitted).

> As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of ideas or views expressed are content based. By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral.

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994) (citation omitted). Thus, in *Giani* we viewed as content neutral a requirement that direct mail solicitors register with the state, reasoning that this requirement targeted the secondary effects of speech—increased fraud and misrepresentation—and was not

intended to suppress any particular point of view. 199 F.3d at 1247. As we stated in another case, simply because an otherwise content-neutral law has "an incidental effect on some speakers or messages" does not change its classification so long as it "serves purposes unrelated to the content of expression." *Golan v. Holder*, 609 F.3d 1076, 1083 (10th Cir. 2010).

On its face, section 77-27-21.5 is a content-neutral regulation. The law says nothing about the ideas or opinions that Mr. Doe may or may not express, anonymously or otherwise. Neither is it aimed at "supress[ing] the expression of unpopular views," *Giani*, 199 F.3d at 1247, but rather it is directed towards aiding the police in solving crimes. As in *Giani*, we therefore examine this law as a content-neutral regulation.

As a content-neutral regulation, Utah's reporting law is subject to intermediate scrutiny, meaning that the law will be upheld if "the Act (1) serves a substantial government interest and (2) is 'narrowly drawn' to serve that interest 'without unnecessarily interfering with First Amendment freedoms.'" *Id.* (quoting *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980)). We have no doubt that the State of Utah has a compelling interest in investigating kidnapping and sex-related crimes. Thus, our consideration of this statute focuses on whether it unnecessarily interferes with Mr. Doe's First Amendment freedoms in serving this interest. In reviewing state statutes challenged on First Amendment grounds, we will uphold a law if it is "readily susceptible to a

-8-

narrowing construction that would make it constitutional." *ACLU v. Johnson*, 194 F.3d 1149, 1159 (10th Cir. 1999). Nevertheless, "[t]he key to application of this principle is that the statute must be readily susceptible to the limitation; we will not rewrite a state law to conform it to constitutional requirements." *Id.*

Mr. Doe argues that the statute is unconstitutional because the required disclosure of internet identifiers to state officials, as well as the possibility of disclosure of those identifiers to the public, chills his speech.[5] Turning first to the possibility of disclosure to the public, Mr. Doe focuses on the language of section 77-27-21.5(2)(c), which allows the state to "share information provided by an offender under this section that may not be made available to the public [on the sex-offender notification and registration website], but only: (i) for the purposes under this Subsection (2); *or* (ii) in accordance with Section 63G-2-206." (emphasis added). According to Mr. Doe, the "or" in this statute means that the government may choose to disclose information to the public, free from the privacy safeguards contained in section 63G-2-206, so long as it is "to assist in investigating kidnapping and sex-related crimes." § 77-27-21.5(2). Thus, Mr.

_____

[5] Mr. Doe also alleges that the law is improper because it is not the least restrictive means of addressing the state's interest. However, under intermediate scrutiny "a regulation need not be the least speech-restrictive means of advancing the Government's interests. Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Turner Broad.*, 512 U.S. at 662 (internal quotation marks and ellipsis omitted).

Doe argues, the statute allows for the possibility of forced public disclosure of what would otherwise be anonymous speech.

However, although subsection (c)(i) may not contain the explicit privacy safeguards listed in section 63-G-2-206, we are not persuaded that this subsection permits the unrestricted disclosure of information to the general public. Section 21.5 discusses two classes of information—information that "shall [be made] available to the public," and information that "may not be made available to the public" but may be "shared" for limited law-enforcement purposes or in accordance with section 63-G-2-206. The statutory language thus suggests a distinction between making information available to the public and "sharing" information. Throughout GRAMA and other privacy-related Utah statutes, "share" is used to indicate the limited transfer of information to specified recipients, with the confidentiality of this information otherwise remaining intact. *See, e.g.*, Utah Code Ann. § 63G-2-206(4)(b) (providing for the sharing of records between other governmental entities for specified purposes, with the recipient required to abide by the statutory restrictions on access); *id.* § 26-1-17.5 (permitting sharing of confidential immunization records among certain entities for specified purposes); *id.* § 53-14-101 (authorizing law enforcement agencies to share employee applicant information with other law enforcement agencies, provided that the confidentiality of the information is otherwise maintained); *see also id.* § 63G-2-601(2)-(3) (requiring an information-collecting agency to

-10-

disclose the specific classes of persons and governmental entities with whom information is shared).  Nowhere in the Utah code is "share" used to indicate the unrestricted disclosure of information to the general public.

In light of this broader statutory context, as well as the limited law-enforcement purposes for which internet identifiers may be "shared" under this section, we conclude that section 77-27-21.5(2)(c)(i) is readily susceptible of a much narrower construction than advanced by Mr. Doe.  We thus read this statute as permitting sharing only among law-enforcement agencies, not the public at large, and only for the recited law-enforcement purposes.

As for Mr. Doe's arguments concerning the potential chilling effect of disclosure to state officials, we also hold that the statute includes sufficient restrictions so as not to unnecessarily chill Mr. Doe's speech.  Mr. Doe argues that the language of section 77-27-21.5(2) is broad enough to allow the state to monitor his communications at any time, which in turn may chill any anonymous criticisms of oppressive laws or state practices he might otherwise make via the internet.  However, while this section, which allows the State to use an offender's internet identifiers "to assist in investigating kidnapping and sex-related crimes, and in apprehending offenders,"§ 77-27-21.5(2), can be read broadly, we conclude that it is also readily susceptible to a narrowing construction.  Accordingly, we read this language, as did the district court, as only allowing state actors to look beyond the anonymity surrounding a username in the course

-11-

of an investigation after a new crime has been committed.

Although this narrow interpretation may still result in the disclosure of Mr. Doe's online identifiers to state officials, such identification will not unnecessarily interfere with his First Amendment freedom to speak anonymously. First, we note that such a disclosure would generally occur, if at all, at some time period following Mr. Doe's speech and not at the moment he wished to be heard. As the Fourth Circuit has explained, "Speech is chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a pre-condition to expression. In other words, the First Amendment protects anonymity where it serves as a catalyst for speech." *Peterson v. Nat'l Telecomm. & Info. Admin.*, 478 F.3d 626, 632 (4th Cir. 2007) (citation omitted); *see also Buckley*, 525 U.S. at 199-200 (holding that a law requiring petition circulators to attach an affidavit with personal information to completed petitions was constitutional but invalidating a requirement that the circulators wear name badges at the time they gathered petition signatures because it "compelled . . . identification at the precise moment when the circulator's interest in anonymity [was] greatest"). Although there is a possibility that a government agent would have access to Mr. Doe's identity at the time he was speaking—as, for example, if an undercover sought him out in a chat room in the course of investigating a sex crime—we are not persuaded that this possibility imposes a constitutionally improper burden on speech. As the Supreme Court noted in *Laird v. Tatum*:

-12-

> [T]his Court has found in a number of cases that constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights. In none of these cases, however, did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain [information-gathering] activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual.

408 U.S. 1, 11 (1972) (citations omitted).

As a final First Amendment consideration, Mr. Doe alleges that Utah's statute is overbroad. Specifically, Mr. Doe argues that the law is unconstitutional because it allows the state to collect the internet identifiers of individuals who are required to register under the reporting statute because of their involvement with a kidnapping offense. According to Mr. Doe, because these offenders' "underlying offenses are not sex-related crimes," the statute is not narrowly drawn to serve the stated purpose of investigating sex-related crimes. (Appellant's Reply Br. at 18.) However, the most recent enactment of the statute allows state officials to access online identifiers "to assist in investigating *kidnapping* and sex-related crimes," § 77-27-21.5(2) (emphasis added), and we are not persuaded that individuals convicted of kidnapping offenses constitute "third parties whose speech is more likely to be protected by the First Amendment than the plaintiff's speech," *D.L.S. v. Utah*, 374 F.3d 971, 976 (10th Cir. 2004); *see also Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466

-13-

U.S. 789, 802 (1984) ("[I]f the ordinance may be validly applied to [the plaintiff], it can validly be applied to most if not all . . . parties not before the Court.").

*2. Mr. Doe's claims under the Fourth Amendment and Ex Post Facto Clause*

We now consider Mr. Doe's claim that he has a reasonable expectation of privacy in his online identifiers and that requiring him to report these identifiers to the state of Utah violates his Fourth Amendment right to be free from unreasonable searches and seizures. We touched on this issue in *United States v. Perrine*, 518 F.3d 1196 (10th Cir. 2008). In *Perrine*, Pennsylvania police officers obtained, without a warrant, subscriber information—including the IP address—associated with the unique Yahoo! online identifier "stevedragonslayer" from Yahoo! (after an individual using that identifier showed pornographic videos of underage girls to another visitor in a Yahoo! chatroom). *Id.* at 1199. Using that IP address, the officers were then able to ascertain the defendant's name and residential address from Cox Communications, the internet service provider that had issued the IP address. *Id.* at 1199-1200. Following his conviction, the defendant challenged the officer's actions based, in part, on his argument that the police had violated his Fourth Amendment rights. We rejected this argument and held that the defendant had no reasonable expectation of privacy in "information that he voluntarily transmitted to the third-party internet providers, Cox and Yahoo!" *Id.* at 1204.

On appeal, we see no reason why we are not bound by our earlier decision

-14-

in *Perrine*. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superceding contrary decision by the Supreme Court."). Although Mr. Doe now argues that there is a reasonable expectation of privacy in online identifiers because it is not always the case that an individual can be identified from his identifier, even if police are in possession of the associated IP address, he has raised these arguments for the first time on appeal. "Generally, we do not consider issues not presented to, considered and decided by the trial court, because an appellant's new argument gives rise to a host of new issues, and Appellee had no opportunity to present evidence it may have thought relevant on these issues." *Utah Envtl. Cong. v. Russell*, 518 F.3d 817, 828-29 (10th Cir. 2008) (internal quotation marks, brackets, and citation omitted). Such is the case here; Mr. Doe's arguments raise a slew of new issues and evidentiary questions to which the State did not have a fair opportunity to respond.[6] However, even if Mr. Doe's arguments were not forfeited, as the district court correctly observed, "there are no facts [in the record] from which the court can conclude that [Mr. Doe's] identities are shielded from [his] Internet service provider." (Appellant's App. at

---

[6] Indeed, as illustrative of the new evidence needed to support Mr. Doe's arguments, he has asked this court to take judicial notice of facts that were not presented in the district court but are, according to Mr. Doe, "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonabl[y] be questioned." (Appellant's Br. at 37 n.70; *see also id.* at 38 n.71.)

-15-

293.) Accordingly, we find no error in the district court's ruling on Mr. Doe's Fourth Amendment claim.

Finally, we consider Mr. Doe's contention that the district court erred by holding that Utah's statute is not an impermissible ex post facto law. "[T]he threshold inquiry for assessing a violation of the Ex Post Facto Clause in the present case is whether Utah's . . . program constitutes additional criminal punishment for the crimes previously committed by those subject to its provisions." *Femedeer v. Haun*, 227 F.3d 1244, 1248 (10th Cir. 2000). Thus, "[i]f the notification measures are deemed civil rather than criminal in nature, they present no ex post facto violation." *Id.* Even where, as here, neither party contests that the legislature intended to establish a civil remedy, we must still consider whether "the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S. 93, 99 (1997) (internal quotation marks, brackets, and citation omitted). However, "[o]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100 (internal quotation marks omitted).

In *Femedeer v. Haun*, after examining the same Utah statute at issue in this case—absent the requirement that an offender disclose his or her internet identifiers—we stated that the evidence did "not come even close to the 'clearest

proof' necessary to overcome the civil intent of Utah's legislature."  227 F.3d at 1253.  We then held that "Utah's notification scheme imposes only a civil burden upon sex offenders and therefore does not run afoul of the Ex Post Facto Clause." *Id*.  Nevertheless, on appeal Mr. Doe argues that this new disclosure requirement provides "'the clearest proof' that the notification scheme is an ex post facto law that is punitive in purpose and effect."  (Appellant's Br. at 45.)  Looking closely at Mr. Doe's argument on this issue, it seems clear that his contentions depend entirely upon his argument that the Utah statute would allow impermissible public disclosure of his internet identifiers, thereby destroying his right to anonymous speech.  However, because we conclude that Utah's registration statute does not violate the First Amendment, we hold that the effect of the new disclosure requirements is not substantial enough to alter our original analysis of the statute in *Femedeer*.  Thus, we hold that the district court did not err in dismissing Mr. Doe's claim under the Ex Post Facto Clause.

Therefore, for these and the foregoing reasons, we **AFFIRM** the district court's ruling vacating its earlier orders enjoining enforcement of the statute.