

# IN THE
# TENTH COURT OF APPEALS

## No. 10-10-00306-CR

**CRAIG REYNOLDS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 220th District Court
Bosque County, Texas
Trial Court No. 09-14358-BCCR**

# O P I N I O N

Appellant Craig Rudy Reynolds was charged by indictment with the offense of failure to comply with sex-offender registration requirements. The charges originated from a 1990 conviction for sexual assault of a child, for which Reynolds was sentenced to five years' imprisonment. Reynolds apparently served his entire five-year sentence for the sexual-assault-of-a-child conviction and was released in August 1995. It is undisputed that Reynolds never thereafter registered as a sex offender. A jury thus

convicted Reynolds of failing to comply with sex-offender registration requirements and assessed his punishment at five years' confinement. This appeal ensued.

## APPLICABILITY OF SEX-OFFENDER REGISTRATION STATUTE TO REYNOLDS

In his first issue, Reynolds contends that there is no evidence to establish that he violated the sex-offender registration statute because the statute did not require him to register. More specifically, Reynolds argues that his obligation to register had expired by the time the registration statute was amended in 2005; therefore, the amendments did not apply to him.

The Texas Legislature enacted its first sex-offender registration statute in 1991 as former article 6252-13c.1, Revised Civil Statutes. *Ex parte Arce*, 297 S.W.3d 279, 281 (Tex. Crim. App. 2009); *see* Act of May 26, 1991, 72d Leg., R.S., ch. 572, § 1, 1991 Tex. Gen. Laws 2029. The registration statute applied only "to a reportable conviction or adjudication occurring on or after September 1, 1991." Act of May 26, 1991, 72d Leg., R.S., ch. 572, § 1, 1991 Tex. Gen. Laws 2029, 2030. Because Reynolds's sexual-assault-of-a-child conviction was in 1990, the sex-offender registration statute did not apply to him.

In 1997, the Legislature redesignated article 6252-13c.1, Revised Civil Statutes, as chapter 62 of the Code of Criminal Procedure, effective September 1, 1997. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 668, § 10, 1997 Tex. Gen. Laws 2253, 2264. The enactment amended the sex-offender registration statute to permit retroactive application to persons having "a reportable conviction or adjudication occurring on or after September 1, 1970." *Arce*, 297 S.W.3d at 281; *see* Act of June 1, 1997, 75th Leg., R.S.,

ch. 668, § 1, 1997 Tex. Gen. Laws 2253, 2260. But the enactment also included the following uncodified "savings clause":

> (a) The change in law made by this Act to Article 62.11, Code of Criminal Procedure [providing chapter 62 applies only to a reportable conviction on or after September 1, 1970], as redesignated and amended by this Act (formerly Subsection (a), Section 8, Article 6252-13c.1, Revised Statutes), applies only to a defendant who, with respect to an offense listed in Subdivision (5), Article 62.01, Code of Criminal Procedure, as redesignated and amended by this Act (formerly Subdivision (5), Section 1, Article 6252-13c.1, Revised Statutes), on or after the effective date of this Act:

>> (1) is confined in a penal institution, as that term is defined by Subdivision (3), Article 62.01, Code of Criminal Procedure, as redesignated and amended by this Act (formerly Subdivision (3), Section 1, Article 6252-13c.1, Revised Statutes); or

>> (2) is under the supervision and control of a juvenile probation office or an agency or entity operating under contract with a juvenile probation office, a community supervision and corrections department, or the pardons and paroles division of the Texas Department of Criminal Justice.

> (b) A defendant who, on the effective date of this Act, is not described by Subdivision (1) or (2) of Subsection (a) of this section is covered by the law in effect under Subsection (a), Section 8, Article 6252-13c.1, Revised Statutes, before that section was redesignated and amended by this Act, and the former law is continued in effect for that purpose.

Act of June 1, 1997, 75th Leg., R.S., ch. 668, § 11, 1997 Tex. Gen. Laws 2253, 2264. Thus, the retroactive application of the statute was restricted to persons who were confined in a penal institution or under the supervision and control of a probation or parole agency pursuant to the reportable conviction on or after September 1, 1997. *See id.* And subsection (b) of the "savings clause" applied to offenders not confined in a penal institution or under the supervision and control of a probation or parole agency

pursuant to the reportable conviction on or after September 1, 1997, preserving for such persons the law in effect before the amendment. *See id.*

Reynolds had served his entire sentence for his 1990 sexual-assault-of-a-child conviction and had been released before September 1, 1997; therefore, subsection (b) of the "savings clause" applied to him. Accordingly, although Reynolds's sexual-assault-of-a-child conviction occurred after September 1, 1970, the law in effect before the 1997 amendments continued to determine whether he was required to register, and, under the prior law, Reynolds did not have to register as a sex offender. Thus, after the 1997 amendments to the sex-offender registration statute, Reynolds still did not have to register.

In 2005, the Legislature then "reenacted and amended" chapter 62. *See* Act of May 26, 2005, 79th Leg., R.S., ch. 1008, § 1.01, 2005 Tex. Gen. Laws 3385, 3386.

> House Bill 867 was adopted after a select interim committee met to consider and recommend changes in chapter 62. *See* House Select Interim Comm. on Sex Offender Statutes, Texas House of Representatives, Interim Report (2004). As a result of numerous amendments to chapter 62 over the years, there was "a very real concern that the registration program has proved to be cumbersome and difficult to manage." *Id.* at 1. "For this reason, the Speaker created this select interim committee to examine Chapter 62 to determine what changes, if any, are needed to streamline and clarify the provisions." *Id.* House Bill 867 was adopted to deal with the problems addressed by the interim committee. *See* House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. C.S.H.B. 867, 79th Leg., R.S. (2005) (committee report). It dealt with chapter 62 in its entirety, expressly repealing and reenacting many provisions of the chapter.

Op. Tex. Att'y Gen. No. GA-0454 (2006); *see Ex parte Schroeter*, 958 S.W.2d 811, 812 n.2 (Tex. Crim. App. 1997) (explaining that Attorney General's opinions are persuasive authority).

As part of these 2005 amendments, the Legislature repealed article 62.11 of the Code of Criminal Procedure, which provided that chapter 62 applied only to a reportable conviction on or after September 1, 1970, and instead enacted article 62.002 to address the applicability of chapter 62. Act of May 26, 2005, 79th Leg., R.S., ch. 1008, § 1.01, 2005 Tex. Gen. Laws 3385, 3388, 3410. Like former article 62.11, article 62.002 of the Code of Criminal Procedure also provides, "This chapter applies only to a reportable conviction or adjudication occurring on or after September 1, 1970," TEX. CODE CRIM. PROC. ANN. art. 62.002(a) (West 2006), but instead of also including the "savings clause" from the 1997 enactment, the 2005 enactment included the following transition clause:

> (a) Except as provided by Subsection (b) of this section, the changes in law made by this Act in amending Chapter 62, Code of Criminal Procedure, apply to a person subject to Chapter 62, Code of Criminal Procedure, for an offense or conduct committed or engaged in before, on, or after the effective date of this Act.

> (b) To the extent that the changes in law made by this Act to Chapter 62, Code of Criminal Procedure, change the elements of or punishment for conduct constituting a violation of Chapter 62, those changes apply only to conduct engaged in on or after the effective date of this Act. Conduct engaged in before the effective date of this Act is governed by the law in effect at the time the conduct was engaged in, and that law is continued in effect for that purpose.

Act of May 26, 2005, 79th Leg., R.S., ch. 1008, § 4.01, 2005 Tex. Gen. Laws 3385, 3422. This was the law in effect at the time Reynolds allegedly failed to comply with the sex-offender registration requirements in 2009 (and remains the current law). The issue is whether these 2005 amendments to the sex-offender registration statute imposed on Reynolds a duty to register even though he had never before been required to register.

When interpreting statutes, courts must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)[]. Toward that end, "we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Id.* However, where application of a statute's plain language would lead to absurd consequences, or where "the language is not plain but rather ambiguous," a court may consider "such extratextual factors as executive or administrative interpretations of the statute or legislative history." *Id.* at 785-86. In this context, ambiguity exists when a statute may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous where it reasonably permits no more than one understanding. *See State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007).

*Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012).

Reynolds contends that the 2005 amendments do not apply to him because the transition clause in the 2005 amendments limited the application of the amendments to persons "subject to Chapter 62," and he was not "subject to Chapter 62" because he was not required to register when the amendments took effect.[1] Reynolds argues that a person "subject to Chapter 62" plainly means a person who was already required to register on the effective date of the statute because there would be no reason to limit the changes to those "subject to Chapter 62" if "the intent was to include everyone who had been convicted before the effective date of the Statute." We disagree.

The plain language in the transition clause that the changes in law "apply to a person subject to Chapter 62" simply means that the changes in law apply to a person to

---

[1] As noted by Reynolds, the court of criminal appeals recognized this issue in *Arce* but expressly did not address it. *See Arce*, 297 S.W.3d at 281 n.10 ("Arguably, the transition language referring to a person being subject to Chapter 62 would preclude application to someone who was exempted from Chapter 62 by an earlier version of the statute. We need not, and do not, decide this question, however.").

whom Chapter 62 applies. *See* Act of May 26, 2005, 79th Leg., R.S., ch. 1008, § 4.01, 2005 Tex. Gen. Laws 3385, 3422. And Chapter 62 applies to Reynolds because he has a reportable conviction that occurred after September 1, 1970. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(A) (West. Supp. 2011), art. 62.002(a). Furthermore, the transition clause states that the changes in law apply to a person subject to Chapter 62 (here, Reynolds) whether the offense or conduct that resulted in Chapter 62's requirements was committed or engaged in before, on, or after the effective date of the Act. *See* Act of May 26, 2005, 79th Leg., R.S., ch. 1008, § 4.01, 2005 Tex. Gen. Laws 3385, 3422. Chapter 62 thus appears to require Reynolds to register.[2] *See* TEX. CODE CRIM. PROC. ANN. art. 62.051(a) (West Supp. 2011).

Reynolds argues, however, that the uncodified "savings clause" that was added in 1997 was not repealed by the 2005 amendments and, therefore, the "savings clause" continued to apply to him when he refused to register in 2009. Reynolds states that if the 1997 "exemption" was repealed, it must have been by implication and there is nothing to suggest that that is what the legislature intended to do. Reynolds also states that we should presume that the amendments do not apply retroactively and "should not accept the claim that the amendments apply retroactively without clear evidence

---

[2] Reynolds does not argue that subsection (b) of the transition clause prevents the 2005 amendments from applying to him retroactively. Whether the application of the statute to Reynolds violates the constitutional prohibition against retroactive laws is discussed later.

that was the intent of the legislature." Dicta by the court of criminal appeals in *Ex parte Harbin*, 297 S.W.3d 283 (Tex. Crim. App. 2009), however, suggests otherwise.[3]

The *Harbin* court expressly stated that the 2005 amendments to the registration statute repealed all of article 62.11 of the Code of Criminal Procedure, including the uncodified "savings clause." *Harbin*, 297 S.W.3d at 286. The court reasoned,

> Technically, only the codified portion of article 62.11 was removed in House Bill 867. However, since there is no indication that the legislature wished to retain or relocate the uncodified portion and since the "savings clause" appears to be inconsistent with the 2005 statute's amendments and retroactive application, the uncodified portion has effectively been repealed.

*Id.* at 286 n.5. The *Harbin* court thus concluded that, effective September 1, 2005, offenders must register for all offenses listed in article 62.001(5) of the Code of Criminal Procedure that occurred on or after September 1, 1970. *Id.* at 286. The "savings clause" applied only to offenders who failed to register during the time period between September 1, 1997, and August 31, 2005. *Id.* at 287.

Reynolds allegedly committed the offense of failure to comply with sex offender registration requirements in 2009; therefore, the "savings clause" would not apply to him. *See id.* at 286-87; *see also Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004) (op. on reh'g) (stating that court of appeals is "bound by the precedent of the Texas Court of Criminal Appeals and has no authority to disregard or overrule [it]"), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007). And without the "savings clause," the language of chapter 62 no longer excludes anyone who has a reportable conviction or

---

[3] The Texas Attorney General has also opined that the "savings clause" is no longer effective. Op. Tex. Att'y Gen. No. GA-0454 (2006); *see Schroeter*, 958 S.W.2d at 812 n.2 (explaining that Attorney General's opinions are persuasive authority).

adjudication occurring on or after September 1, 1970, from the requirements of the chapter. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.001(5), 62.002(a), 62.051(a).

Chapter 62 thus applies to Reynolds, and, after the 2005 amendments to the sex-offender registration statute, Reynolds had a duty to register. Accordingly, we conclude that, because Reynolds did not register, the evidence is sufficient to establish that Reynolds violated the sex-offender registration statute. We overrule Reynolds's first issue.

### CONSTITUTIONALITY OF SEX-OFFENDER REGISTRATION STATUTE'S RETROACTIVITY

In his second issue, Reynolds contends that application of the sex-offender registration statute to him violates the constitutional prohibition against retroactive laws. Reynolds argues that he had been discharged of his obligation to register before the 2005 amendments; therefore, he had a vested, substantive right not to be subject to the registration requirements.

When reviewing the constitutionality of a statute, we presume that the statute is valid and that the Legislature did not act arbitrarily and unreasonably in enacting the statute. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The party challenging the statute has the burden of establishing its unconstitutionality as applied to him, and in the absence of evidence supporting the challenge, the presumption of constitutional validity remains in force. *Id.*

Article I, section 16 of the Texas Constitution states, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be

made."[4]  TEX. CONST. art. I, § 16.  Mere retroactivity, however, is not sufficient to invalidate a statute.  The retroactive-laws provision operates to prohibit the application of statutes that disturb vested, substantive rights.  *Ibarra v. State*, 11 S.W.3d 189, 192 (Tex. Crim. App. 1999).  The prohibition against retroactive application of laws does not apply to procedural or remedial statutes, because such statutes typically do not affect a vested right.  *Id.; see Univ. of Tex. Sw. Med. Ctr. v. Estate of Arancibia*, 324 S.W.3d 544, 548 (Tex. 2010).  Furthermore, "[a] valid exercise of the police power by the Legislature to safeguard the public safety and welfare can prevail over a finding that a law is unconstitutionally retroactive."  *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 633-34 (Tex. 1996).

The sex-offender registration statute was enacted to promote public safety.  *See Rodriguez*, 93 S.W.3d at 68-69; *In re M.A.H.*, 20 S.W.3d 860, 863 (Tex. App.—Fort Worth 2000, no pet.) ("The State provides proof that in enacting the current registration and notification plan, the legislature considered the unique threat sex offenders present to public safety, the high rate of recidivism among sex offenders, the low incidence of rehabilitation among sex offenders, and that sexual misconduct often begins as a juvenile.  The State provides further proof that the legislature's goal in passing the registration and notification provisions was to advance public safety objectives by

---

[4] Reynolds's second issue concerns only the prohibition against retroactive laws.  He does not argue that the application of the sex-offender registration statute to him violates the constitutional provision against ex post facto laws.  In fact, Reynolds expressly states in his brief, "The court has already determined that registration statutes are not primarily punitive, and therefore *ex post facto* does not apply."  *See Rodriguez*, 93 S.W.3d at 79 (holding 1997 amendments to sex-offender registration statute were not ex post facto violation because intent of amendments was civil and remedial in nature and effect of amendments was not so punitive as to transform statute into criminal sanction).

facilitating law enforcement's monitoring of sex offenders and by alerting members of the public who may be in an especially vulnerable situation to take appropriate precautions which could deter or prevent further crimes."). The 2005 amendments to the registration statute were enacted specifically to address concerns that, because the registration program had been amended numerous times since its enactment, it had become cumbersome and difficult to manage. *See* Op. Tex. Att'y Gen. No. GA-0454. Reorganizing and amending chapter 62 to make it more easily understood by persons required to administer it would then presumably further the registration program's original purpose—to promote public safety.

For these reasons, we conclude that the 2005 amendments to the registration statute are necessary to safeguard the public safety of the citizens of this state. Accordingly, the retroactive effect of the statute does not render it unconstitutional. *See Barshop*, 925 S.W.2d at 633-34. We overrule Reynolds's second issue.

## MISTAKE OF LAW

In his third issue, Reynolds contends that the evidence is "legally insufficient to establish appellant violated the sex offender registration statute since appellant established the defense of mistake of law based on his reliance on a written letter from the Texas Department of Public Safety stating he did not have to register."

Mistake of law is an affirmative defense to prosecution. TEX. PENAL CODE ANN. § 8.03(b) (West 2011). To establish the affirmative defense, a defendant bears the burden of proving by a preponderance of the evidence that he

reasonably believed the conduct charged did not constitute a crime and that he acted in reasonable reliance upon:

> (1) an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

> (2) a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

*See id.* §§ 2.04, 8.03(b) (West 2011).

The proper standard in criminal cases for review of legal sufficiency challenges to a jury's refusal to find on an issue that the defendant had the burden of proof is the same standard applied in civil cases. *Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see Roberson v. State*, No. 10-10-00065-CR, 2011 WL 2480283, at *1 (Tex. App.—Waco Jun. 15, 2011, no pet.) (mem. op., not designated for publication). That standard requires a two-step analysis. *Cleveland*, 177 S.W.3d at 387. We first examine the record for any evidence that supports the jury's refusal to find while ignoring all evidence to the contrary. *Id.* If no evidence supports the refusal to find, we then examine the entire record to determine whether the evidence establishes the affirmative defense as a matter of law. *Id.*

After examining the record according to the first step of the analysis, we conclude that some evidence exists to support the jury's refusal to find on the affirmative defense of mistake of law. Austin Police Detective Mike Summers testified that he and two other detectives are responsible for the registration management of registered sex offenders in Austin, Texas. He received a call from the Texas Attorney

General's Office indicating that Reynolds was potentially an unregistered sex offender living in Austin. Summers investigated and discovered that Reynolds had indeed lived in Austin and that he had been convicted of sexual assault on September 25, 1990.

Summers called Reynolds and told him that he had been notified that Reynolds was living in Austin and that while he was there, Reynolds had a duty to register. Reynolds responded by telling Summers that he was now living in Valley Mills. Summers told Reynolds that he then had a duty to register in Valley Mills. Reynolds indicated, however, that he did not believe he had a duty to register.

Summers testified that he began to look into the issue with Reynolds. Over the course of several phone calls, Reynolds told Summers that he had been given paperwork from the Department of Public Safety that said he no longer had the duty to register.[5] Summers informed Reynolds that the laws had changed and that new laws had come into effect requiring him to register. In fact, Summers told Reynolds this on multiple occasions. Summers also called Valley Mills Chief of Police Tommy Roach and informed him that Reynolds was residing in his law enforcement jurisdiction.

---

[5] Maggie Guthrie, the former sex-offender registrar for the Lewisville Police Department, testified that in August 2005 she attempted to determine whether Reynolds had a duty to register as a sex offender. After contacting the Department of Public Safety in Austin, Guthrie concluded that Reynolds did not have a duty to register because he had no reportable conviction. Guthrie reported her conclusions to the district attorney. She also wrote a letter on August 5, 2005 to Texas D.P.S. Crime Records, Sex Offender Registration, stating that she did not believe that Reynolds was required to register as a sex offender as of the date of the letter. On October 6, 2005, Guthrie received a fax from Marilyn Martinets at D.P.S. which stated, "[Guthrie] we have noted on the jacket that Mr. Reynolds does not register because: NO REPORTABLE CONVICTION."

Guthrie eventually met with Reynolds on October 24, 2005, and explained to him what she had discovered. Guthrie told Reynolds that he did not have a duty to register and that she had supporting documentation of that from D.P.S. in Austin. Reynolds said that he would like to have a copy of the documentation so that he had it in writing. Guthrie made Reynolds a copy of the fax from Martinets and told him that he probably needed to laminate it and carry it on his person in case he ran into the situation again at a different place and time.

Roach testified that on or about June 30, 2009, he received the phone call from Summers who told him that Reynolds, a sex offender, was living in his jurisdiction and had not registered. After receiving the call, Roach went to the city clerk and obtained a water application showing Reynolds had applied for water in Valley Mills. Roach then confirmed that Valley Mills was providing water to that location for Reynolds. Roach then received a phone call from Reynolds in which Reynolds told Roach that he had been in contact with Summers and that he wanted to turn himself in. Roach told Reynolds that he was not aware of any warrants for Reynolds's arrest but that Reynolds did need to come to Roach's office. Reynolds agreed to come.

Roach testified that on the next day, Reynolds came into Roach's office. Roach informed Reynolds that he had received a copy of a judgment from Summers stating that he had been convicted of a sexual assault in 1990 and that he had a duty to register as a sex offender. Reynolds responded that it was mistaken identity. When Roach showed Reynolds a copy of the judgment with Reynolds's signature and fingerprint on it, Reynolds still insisted that it was a mistake and that it was not him. Reynolds denied ever having been convicted as a sex offender. Roach told Reynolds that if he did not think that it was him, Roach would get a set of Reynolds's fingerprints and compare them with the print on the judgment.

Roach obtained a set of Reynolds's fingerprints and a "very good copy" of the judgment and compared the two. Roach stated that he is not a fingerprint expert, but he could tell Reynolds's fingerprint matched the fingerprint on the judgment. Roach also emailed Reynolds's fingerprints and the copy of the judgment to a reserve officer

who is a fingerprint expert. Several days later, the reserve officer replied that Reynolds's fingerprint and the fingerprint on the judgment were one and the same.

Roach had told Reynolds that if he compared the fingerprints with the judgment and they matched, Roach would get a warrant and arrest Reynolds. Reynolds had said that he did not want to register because the judgment was not his. Reynolds never said that he had been convicted; he said that he did not have a duty to register. Roach stated that he gave Reynolds two or three opportunities to register before he arrested him. The arrest warrant was executed on July 15, 2009.

Reynolds argues that he established the defense of mistake of law because anyone in his position would have relied on the written document over the word of someone like Summers who did not show him a document or the language that he was relying on. But ignoring all evidence contrary to the jury's refusal to find on the affirmative defense of mistake of law, we conclude that there is some evidence that Reynolds did not *reasonably* believe the conduct charged did not constitute a crime and some evidence that he was not acting in *reasonable* reliance upon the document that he obtained from Guthrie. After finding out that Reynolds was relying on the written document, Summers informed Reynolds that the laws had changed and that new laws had come into effect requiring him to register. And Reynolds never even admitted to Roach that he had been convicted; rather, he denied ever having been convicted as a sex offender.

Having concluded that some evidence supports the jury's refusal to find on the affirmative defense of mistake of law, our legal sufficiency inquiry ends. *See Cleveland*,

177 S.W.3d at 387. We hold that the evidence concerning the jury's refusal to find on the affirmative defense of mistake of law is legally sufficient. Reynolds's third issue is overruled.

## CONCLUSION

Having overruled all three of Reynolds's issues, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 23, 2012
Publish
[CR25]