Harvey Brown, Justice
In this appeal from the trial court's denial of a pretrial application for writ of habeas corpus, we consider a constitutional challenge to the Texas Sex Offender Registration Program's requirement that convicted sex offenders register internet identifiers. Chapter 62 of the Code of Criminal Procedure (the Sex Offender Registration Program) requires convicted sex offenders to disclose and periodically update information regarding their internet identities. TEX. CODE CRIM. PROC. art. 62.051(c)(7). Article 62.0551(a) requires registrants to report any change or establishment of new online identifiers. TEX. CODE CRIM. PROC. art. 62.0551(a).
Dennis Lee Odom, a convicted sex offender charged with failing to report online identifiers, appeals the denial of his pretrial application for writ of habeas corpus challenging Article 62.0551(a) 's reporting requirements as a facially unconstitutional violation of the First Amendment right to freedom of speech. He asserts that Article 62.0551 is unconstitutional on its face because "[i]t results in an impermissible prior restraint on speech and is overbroad when considering the State's interest in preventing crime."
We affirm the trial court's denial of habeas relief.
Background
A. Sex offenders' duty to register and reporting requirements
Chapter 62 of the Texas Code of Criminal Procedure contains provisions that relate to the "Sex Offender Registration Program." TEX. CODE CRIM. PROC. Arts. 62.001 -.408. A reportable conviction or adjudication requires lifetime registration as a sex offender.
*906 TEX. CODE CRIM. PROC . art. 62.101(a)(1). The registration program is designed to protect the public from sex offenses that could be perpetrated by convicted sex offenders. See In re M.A.H. , 20 S.W.3d 860, 864 (Tex. App.-Fort Worth 2000, no pet.) ; see also Ex parte Robinson , 80 S.W.3d 709, 715 (Tex. App.-Houston [1st Dist.] 2002), aff'd , 116 S.W.3d 794 (Tex. Crim. App. 2003) ; Reynolds v. State , 385 S.W.3d 93, 100 (Tex. App.-Waco 2012), aff'd , 423 S.W.3d 377 (Tex. Crim. App. 2014) ; Velez v. State , 14-00-01514-CR, 2002 WL 220572, at *3 (Tex. App.-Houston [14th Dist.] Feb. 14, 2002, no pet.)
Article 62.051 denotes those persons who are required to register as a sex offender. TEX. CODE CRIM. PROC. art. 62.051(a). The article also details what must be included in the sex offender registration form. Id. art. 62.051(c), (d). One requirement is that a registrant disclose "the identification of any online identifier established or used by the person." Id. art. 62.051(c)(7). An "online identifier" is:
[E]lectronic mail address information or a name used by a person when sending or receiving an instant message, social networking communication, or similar Internet communication or when participating in an Internet chat. The term includes an assumed name, nickname, pseudonym, moniker, or user name established by a person for use in connection with an electronic mail address, chat or instant chat room platform, commercial social networking site, or online picture-sharing service.
Id. art. 62.001(12).
If a person who is required to register should change "any online identifier included on the person's registration form or establishes any new online identifier not already included on the person's registration form," then that person is required to report the change or establishment to the appropriate authority within seven days. Id. art. 62.0551(a).
An individual commits the offense of failing to comply with sex offender registration requirements if "the person is required to register and fails to comply with any requirement of" Chapter 62. TEX. CODE CRIM. PROC. art. 62.102(a) ; see also Young. v. State , 341 S.W.3d 417, 425 (Tex. Crim. App. 2011) (" Article 62.102 is a generalized 'umbrella' statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62."). Depending on certain conditions, the offense for failure to comply with the registration requirements range from state jail felony to first degree felony. See TEX. CODE CRIM. PROC. art. 62.102(b), (c).
B. The proceedings below
Odom was convicted of aggravated sexual assault of a child in 1996. He was discharged from parole in April 2015 and is required to register under the Sex Offender Registration Program. Odom verified his registration at the Waller County Sheriff's Office in December 2015. He did not report any online identifiers.
In November 2016, an investigator became aware of an unreported Facebook account belonging to Odom that had been in existence longer than the seven-day period for reporting the change or establishment of online identifiers. See TEX. CODE CRIM. PROC. art. 62.0551(a). Odom was indicted for the felony offense of failing to comply with the Sex Offender Registration Program-specifically, failing to report his online identifiers as required by Article 62.0551(a). See TEX. CODE CRIM. PROC. art. 62.102. The indictment alleges, in pertinent part, that Odom
on or about October 28, 2016, did then and there, while knowing that he was required to register with the local law enforcement authority in the county *907 where the defendant resided or intended to reside for more than seven days, to-wit: Waller County, because of a reportable conviction for Aggravated Sexual Assault of a Child, the defendant failed to report a change in Online Identifiers to the Waller County Sheriff's Office.
Odom filed a pretrial application for writ of habeas corpus, challenging Article 62.0551(a) as facially unconstitutional for five reasons. At the hearing on the habeas petition, Odom's counsel stated that Odom was moving forward on only two grounds-his First Amendment and overbreadth arguments, both of which the trial court rejected.
Thus, Odom's two arguments preserved for our review on appeal are that Article 62.0551(a) is:
(1) "unconstitutionally overbroad on its face because it is a content-based restriction that severely criminalizes a substantial amount of speech protected by the First Amendment of the U.S. Constitution, and Article I, Section 8, of the Texas Constitution"; and
(2) "unconstitutionally overbroad on its face under the First Amendment of the U.S. Constitution, and is not narrowly tailored to promote a compelling state interest, as it prohibits a substantial amount of protected speech that is unnecessary to the protection [ ] of children."
Standard of Review
"In general, we review a trial court's ruling on an application for writ of habeas corpus using an abuse-of-discretion standard, and we view any evidence in the light most favorable to that ruling and defer to implied factual findings supported by the record." Ex parte Flores , 483 S.W.3d 632, 638 (Tex. App.-Houston [14th Dist.] 2015, pet. ref'd). However, whether a statute is facially unconstitutional is a question of law that we review de novo. Ex parte Lo , 424 S.W.3d 10, 14 (Tex. Crim. App. 2013) ; Ex parte Flores , 483 S.W.3d at 638.
In considering a facial challenge, we usually presume "that the statute is valid and that the legislature has not acted unreasonably or arbitrarily," and the party challenging the statute bears the burden of establishing that it is unconstitutional. Ex parte Lo , 424 S.W.3d at 15. This presumption does not apply, however, if the government regulates speech based on its content. United States v. Playboy Entm't Grp., Inc. , 529 U.S. 803, 817, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). Content-based regulations-those that distinguish favored from disfavored speech based on the idea or message expressed-are presumptively invalid, and the government bears the burden to rebut that presumption. Ex parte Lo , 424 S.W.3d at 15.
Three-part Inquiry
Odom challenges Article 62.0551(a) as facially unconstitutional under the First Amendment, asserting that it infringes on his right to anonymous speech on the internet, "is a content-based restriction that severely criminalizes a substantial amount of speech protected by the First Amendment," and "is not narrowly tailored to promote a compelling state interest."
A facial challenge to the constitutionality of a statute attacks the statute itself rather than the statute's application to the defendant. Peraza v. State , 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). "According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a 'substantial' amount of protected speech 'judged in relation to the statute's plainly legitimate sweep.' " Ex parte Wheeler , 478 S.W.3d 89, 94 (Tex. App.-Houston [1st Dist.] 2015, pet. ref'd)
*908 (quoting Ex parte Lo , 424 S.W.3d at 18, and Virginia v. Hicks , 539 U.S. 113, 118-19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) ); see Wagner v. State , 539 S.W.3d 298, 310 (Tex. Crim. App. 2018). "Thus, the overbreadth doctrine prohibits the government from 'banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.' " Wagner , 539 S.W.3d at 310 (quoting Ashcroft v. Free Speech Coalition , 535 U.S. 234, 255, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) ).
The First Amendment overbreadth doctrine "provides an exception" to the general rule that a facial challenge to the constitutionality of a statute can succeed only when it is shown that the statute is unconstitutional in a substantial number of its applications. Wagner , 539 S.W.3d at 310. However, "[t]he overbreadth doctrine is 'strong medicine' to be employed with hesitation and only as a last resort." Id. (quoting Ex parte Thompson , 442 S.W.3d 325, 349 (Tex. Crim. App. 2014) ). Stated differently, "a statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional application." Ex parte Wheeler , 478 S.W.3d at 94.
Our review of Article 62.0551(a) entails a three-part inquiry: First, do the internet reporting requirements implicate First Amendment rights? Second, if so, what level of scrutiny should be applied? And third, do the challenged provisions pass muster under the proper level of scrutiny? We consider these in turn.
A. The online reporting requirement implicates the First Amendment right to anonymous internet speech
We first determine whether the Sex Offender Registration Program's provisions requiring registrants to report online identifiers implicates the First Amendment. The First Amendment right to freedom of speech includes the right to publish and distribute writings while remaining anonymous. See McIntyre v. Ohio Elections Comm'n , 514 U.S. 334, 342, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). "Anonymity is a shield from the tyranny of the majority. It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation-and their ideas from suppression-at the hand of an intolerant society." Id. at 357, 115 S.Ct. 1511 (citation omitted). Free speech protections extend to communications made through the medium of the internet. See Packingham v. North Carolina , --- U.S. ----, 137 S.Ct. 1730, 1735-37, 198 L.Ed.2d 273 (2017) ; Reno v. American Civil Liberties Union , 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). Accordingly, the First Amendment right to speak anonymously extends to those expressing views on the internet.
But the right of free speech is not absolute. See Grayned v. City of Rockford , 408 U.S. 104, 115, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The right of anonymous speech, including speech on the internet, likewise is not absolute. See People v. Minnis , 409 Ill.Dec. 60, 67 N.E.3d 272, 283 (2016). The State may permissibly infringe upon the right to engage in anonymous speech on the internet when the State's interest is important enough and the law is appropriately tailored to meet the stated interest. See Doe v. Shurtleff , 628 F.3d 1217, 1222 (10th Cir. 2010) ; see also Packingham , 137 S.Ct. at 1737.
At the hearing on the habeas application, Odom's counsel asserted that the Supreme Court's decision in Packingham "recognized that sex offenders do have a First Amendment right to the freedom of speech and that includes anonymous speech on the internet." Packingham , *909 however, does not address anonymous speech and does not stand for an unfettered, unlimited right of sex offenders to interact on social media. As discussed below, although the Court recognized social media networks as a prime location for First Amendment speech, Packingham merely held that a North Carolina law prohibiting registered sex offenders from accessing any social networking sites violated the First Amendment because the restriction was too broad to survive intermediate scrutiny.
By prohibiting sex offenders from using internet websites, "North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." Packingham , 137 S.Ct. at 1737. Applying intermediate scrutiny, the Supreme Court determined that the government has a legitimate interest in public safety (e.g. , protecting children from sexual predators) but this interest could not justify the statute's broad prohibitions. Id. The Court observed that the statute "enacts a prohibition unprecedented in the scope of First Amendment speech it burdens" and concluded that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." Id. at 1737. Because the statute burdened substantially more speech than necessary to further North Carolina's legitimate interest in protecting potential victims from sex crimes, it did not survive intermediate scrutiny. Id.
The Supreme Court cautioned that its opinion "should not be interpreted as barring a State from enacting more specific laws than the one at issue." Id. Indeed, "it can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." The Court recognized that "laws of that type must be the State's first resort to ward off the serious harm that sexual crimes inflict." Id.
Unlike the statute at issue in Packingham , Texas's statute does not prohibit sex offenders from accessing any sites; it only requires reporting of their online identifiers. Odom characterizes Article 62.0551(a) 's requirement that registrants report a change or establishment of online identifiers as an unconstitutional "ban on anonymous internet speech." But the speech remains anonymous to its intended audience; only the government and certain third-party providers have the ability to determine the speech's author. See TEX. CODE CRIM. PROC. art. 62.0061(a) (authorizing Texas Department of Public Safety to provide online identifiers to social networking sites upon request). Nevertheless, because Article 62.0551(a) 's reporting requirement burdens constitutionally protected speech, it must pass First Amendment scrutiny.
B. The online reporting requirement is subject to intermediate scrutiny
We next determine our level of scrutiny. When a defendant challenges the constitutionality of law under the First Amendment, there are two levels of scrutiny-strict and intermediate. Ex parte Thompson , 442 S.W.3d at 344. Strict scrutiny applies to any law that restricts speech based on its content. Id. Under this standard, a statute is constitutional only if it is narrowly drawn to serve a compelling government interest. Id. In this context, a statute is narrowly drawn if it uses the least restrictive means of achieving its purpose.
*910 Id. In contrast, intermediate scrutiny applies to content-neutral statutes. Id. at 344-45. Under that more lenient standard, a statute is constitutional if it promotes a substantial government interest that would be achieved less effectively without the statute. Id. at 345.
Generally, content-neutral statutes impose burdens on speech without reference to the ideas or views expressed. Turner Broad. Sys., Inc. v. Federal Commc'ns Comm'n , 512 U.S. 622, 642-43, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) ; Ward v. Rock Against Racism , 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). To be content neutral, the government regulation of expressive activity must be justified without reference to the content of the regulated speech. Ward , 491 U.S. at 791, 109 S.Ct. 2746. "A regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Id. So long as speaker distinctions are not a subtle means of exercising a content preference, they are not presumed invalid under the First Amendment. Turner Broad. Sys. , 512 U.S. at 645, 114 S.Ct. 2445.
1. Article 62.0551(a) is content neutral
Odom asserts that Article 62.0551(a) is a content-based restriction subject to strict scrutiny. We disagree. On its face, Article 62.0551(a) is content neutral because it does not regulate speech based on content. The statute says nothing about the ideas or opinions registrants may or may not express, anonymously or otherwise. Although Texas courts have not addressed the issue, sex offender registration statutes enacted in at least eight states have been held to be content-neutral regulations subject to intermediate scrutiny.[1]
*911 2. Article 62.0551(a) is not a proxy for content regulation
Odom concedes that the statute "does not regulate content specifically, and does not necessarily make any content distinction.," but argues that the statute "is just as problematic" because it "voices implicit opposition to all internet speech by sex offenders" and "seeks to have the public shun all sex offender speech on the internet." We find this argument unpersuasive. In rejecting the same argument, the Illinois Supreme court explained:
The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation. Although the public availability of the website information may have a lasting and painful impact on sex offenders, these consequences flow not from the statutory registration and notification scheme but from the fact of conviction, which is already a matter of public record. Therefore, we conclude that the disclosure provision is content neutral and, accordingly, is subject to intermediate scrutiny.
Minnis , 409 Ill.Dec. 60, 67 N.E.3d at 288 (quotation and citations omitted); see also Shurtleff , 628 F.3d at 1223 (rejecting argument that court should view Utah's statute as content-based restriction because it had effect of taking away sex offenders' "right to choose whether to speak anonymously or under a pseudonym").
Contrary to Odom's assertions, the mere fact that a regulation affects a category of speakers is not, itself, demonstrative of "implicit opposition" to their speech so that the regulation is a content-based restriction. See Ward , 491 U.S. at 791, 109 S.Ct. 2746 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."). Odom's memorandum in support of his habeas application cites Citizens United v. Federal Election Commission , 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), as an example of the Supreme Court striking down a law affecting a category of speakers. We acknowledge Citizens United's holding that the First Amendment prohibits "restrictions distinguishing among different speakers; allowing speech by some but not others." 558 U.S. at 340, 130 S.Ct. 876. The Court found "no basis for the proposition that, in the context of political speech, the Government may impose restrictions on certain disfavored speakers." Id. at 341, 130 S.Ct. 876. The Court explained that "[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content," and that "[b]y taking the right to speak from some and giving it to others, the *912 Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice." Id. at 340-41, 130 S.Ct. 876. The Court thus applied strict scrutiny to a ban on political speech that was not content neutral. See ids="3639027" index="88" url="https://cite.case.law/us/558/310/">id. at 339-40, 130 S.Ct. 876 (observing that restrictions constituted "ban on speech" and that bans on political speech are subject to strict scrutiny).
Citizens United is inapposite because, although the online reporting statute singles out sex offenders as a category of speakers, it does not target political speech content and is not a ban on speech. See Harris , 772 F.3d at 575. In the context of laws that burden but do not ban speech, the test is not merely whether a law singles out individuals-it is whether the speech-burdening restrictions "are justified without reference to the content of the regulated speech." Boos v. Barry , 485 U.S. 312, 320, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (quotations omitted); see Harris 772 F.3d at 575. So long as speaker distinctions "are not a subtle means of exercising a content preference," otherwise content-neutral provisions are not subject to strict scrutiny. Turner Broad. Sys. , 512 U.S. at 645, 114 S.Ct. 2445.
Article 62.0551(a) 's online reporting requirement does not target sex offenders in a way that suggests it is a proxy for content regulation. See Harris , 772 F.3d at 576 (concluding that California registration statute's purpose was to prevent crime and was not proxy for content regulation). The statute's purpose is to protect the public from sex offenses by convicted sex offenders. Although the statute burdens speech by sex offenders, nothing suggests that its purpose is to disfavor any particular viewpoint or subject matter except possibly the registrant's ability to solicit or trade in sexually explicit materials with minors, and there is no constitutional right to engage in such speech. See Packingham, 137 S.Ct. at 1737 (acknowledging that State may "enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor" and such laws "must be the State's first resort to ward off the serious harm that sexual crimes inflict").
The online reporting statute's purpose and principal effect are to protect the public from future crime, not to shun sex offenders. See Smith v. Doe , 538 U.S. 84, 99, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (holding that Alaska sex offender statute was nonpunitive and that primary purpose of disseminating information on sex offender status was public safety). Odom's assertion that the statute serves to have the "public shun all sex offender speech on the internet" is further belied by the fact that the reported online identifiers are not publicly available. Although Article 62.0061 allows the Texas Department of Public Safety to provide online identifiers to social networking sites upon request, Odom neither asserts nor demonstrates that Article 62.0061 or any other provision of the registration statute makes this information available to the public. See TEX. CODE CRIM. PROC. art. 62.0061(a). Article 62.0061 allows the information to be used by a social networking site or its agent to screen persons using the site but prohibits the use of the information in any other manner. See ids="9030411" index="99" url="https://cite.case.law/us/538/84/#p99">id. art. 62.0061(c). A social networking site that uses reported online identifiers in any unauthorized manner is subject to civil penalties. See id. art. 62.0061(d).
Accordingly, we join eight other courts that have held that sex offender registration statutes are facially content-neutral *913 and subject to intermediate scrutiny.[2]
C. The online reporting requirement satisfies intermediate scrutiny
Generally, to survive intermediate scrutiny, a content-neutral regulation of protected speech must (1) serve or advance a substantial governmental interest unrelated to the suppression of free speech and (2) not burden substantially more speech than necessary to further that interest; or, in other words, it must be narrowly tailored to serve that interest without unnecessarily interfering with free speech. See Turner Broad. Sys. , 512 U.S. at 662, 114 S.Ct. 2445 ; Members of the City Council of Los Angeles v. Taxpayers for Vincent , 466 U.S. 789, 804-05, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). It is undeniable that Texas has a substantial and compelling interest in protecting the public against crimes committed by sex offenders. Thus, our consideration of the statute focuses on whether Article 62.0551(a) unnecessarily interferes with free speech rights in serving this interest.
Under the narrow-tailoring requirement of intermediate scrutiny, the content-neutral regulation need not be the least restrictive or intrusive means of advancing the State's interest. See Ex parte Thompson , 442 S.W.3d at 345 (citing Turner Broad. Sys. , 512 U.S. at 662, 114 S.Ct. 2445 ). Rather, the narrow-tailoring requirement is satisfied so long as the law promotes a substantial governmental interest that would be achieved less effectively absent the law. Id. Here, the online reporting provision directly and effectively serves Texas's substantial interest in protecting the public from recidivist sex offenders. Absent this provision, this interest would not be served as well. See Ward , 491 U.S. at 800, 109 S.Ct. 2746.
Odom asserts that Article 62.0551(a) fails to meet intermediate scrutiny because it burdens more protected speech than necessary by "chilling all anonymous internet speech by sex offenders." The text of the statute, however, demonstrates that it is tailored to avoid chilling more speech than necessary. See Minnis , 409 Ill.Dec. 60, 67 N.E.3d at 290-91 (discussing similar Illinois reporting requirement). The statute does not require disclosure of individuals with whom sex offenders interact. See id. , 409 Ill.Dec. 60, 67 N.E.3d at 291. The statute does not operate as a prior restraint. Rather, it requires sex offenders to report online identifiers after the fact. Although this retroactive operation does not remove the statute from First Amendment scrutiny, it is an example of narrow tailoring. See id.
Odom asserts that Article 62.0551(a) 's online reporting requirement "eliminates the right to anonymous internet speech" for registrants and, in doing so, creates a "chilling effect" on speech. We follow the Tenth Circuit's decision in Shurtleff in rejecting this argument. See 628 F.3d at 1225. In Shurtleff , similar provisions in the Utah registration law were challenged as violating a registrant's right to engage in anonymous online speech by chilling "any anonymous criticisms of oppressive *914 laws or state practices he might otherwise make via the internet." Id. The Tenth Circuit observed that disclosure of online identifiers does not "unnecessarily interfere with [registrant's] First Amendment freedom to speak anonymously." Id. ; see also Coppolino v. Noonan , 102 A.3d 1254, 1284 (Pa. Commw. Ct. 2014) ("[W]e conclude that, as in Shurtleff , the requirement that registrants disclose their Internet identifiers does not burden the right to anonymous speech."), aff'd , 633 Pa. 445, 125 A.3d 1196 (2015). This is because "the First Amendment protects anonymity where it serves as a catalyst for speech." Shurtleff , 628 F.3d at 1225. The right to free, anonymous speech is not infringed upon simply because the government might pierce anonymity after the individual engaged in such speech: "Speech is chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a pre-condition to expression." Id. (quotation omitted). Although it is possible for the State to be aware of a registrant's identity at the time of his speech, this possibility does not impose a constitutionally improper burden on speech. See ids="4076844" index="126" url="https://cite.case.law/f3d/628/1217/#p1222">id. Despite Odom's claim that Article 62.0551(a)"results in an impermissible prior restraint on speech," the statute does not force Odom to reveal his identity as a prerequisite to expression. See id.
Odom further asserts that Article 62.0551(a) chills speech due to "potential resulting public retaliation and abuse" arising from the purported loss of anonymity. But, as with the statute examined in Shurtleff , online identifiers reported under Article 62.0551(a) are shared for limited purposes; they are not made available to the general public. See 628 F.3d at 1224-25. Thus, Article 62.0551(a)"neither prohibits registrants from engaging in any particular speech on the Internet, nor does it unmask registrants' anonymity to the public." Snyder , 101 F.Supp.3d at 703. Rather, registrants' anonymity remains intact with respect to the public. Id. Consequently, we reject Odom's claim that Article 62.0551(a) unnecessarily chills expression under the First Amendment.[3]
Odom notes that Article 62.0061 allows collected online identifiers to be shared with social networking sites and that these sites may, in turn, use this *915 information to exclude access to sex offenders. This is not the same situation as the statute invalidated in Packingham , where the state itself broadly prohibited sex offenders from accessing sites. Similar provisions allowing networking sites access to sex offender's online identifiers have been adopted in other states.[4] These provisions "protect the public, especially minors, from the dangers posed by sexual predators using social networking websites and other similar services." People v. Ellis , 162 A.D.3d 161, 77 N.Y.S.3d 231, 233-34 (2018). As one court has explained: "[W]hile the law limits the ability of law enforcement to prevent a sex offender from using the Internet to contact a child, social networking websites may themselves be able to preclude sex offenders from 'accessing such websites' most vulnerable users.' " Id. at 233. The purpose of provisions such as Article 62.0061"is to enable social networking sites, or authorized Internet entities, to access these Internet identifiers in order to better protect the users of their websites." Id. at 234. Article 62.0061 's allowance for social networking sites to obtain sex offender's online identifiers is narrowly tailored to the state's legitimate purpose of protecting the public from sex offenses. The online identifiers are not accessible to the public, and their use is limited in scope. Although allowing social networking sites access to this information could result in their restricting speech, the State's interest in protecting the public from sex offenses would be less effective absent the provision. See Turner Broad. Sys. , 512 U.S. at 662, 114 S.Ct. 2445.
Finally, Odom concedes that the State has "a significant interest" in protecting the public from future sexually-based offenses but argues that the statute is overbroad because it captures "all internet speech by all sex offenders, regardless of whether they present any individual risk to reoffend." Regarding the lack of an individualized risk assessment for sex offenders, the legislature is entitled to "conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism." Smith , 538 U.S. at 103, 123 S.Ct. 1140 ; see also Packingham , 137 S.Ct. at 1739 (observing that sex offenders are more likely than other types of offenders to be rearrested for sexual offense). Any attempt to more narrowly tailor the reporting provision to exclude sex offenders based upon their risk of reoffending, however that may be determined, would defeat the provision's purpose. See Minnis , 409 Ill.Dec. 60, 67 N.E.3d at 291 (upholding Illinois statute requiring sex offenders to disclose internet identifiers against First Amendment overbreadth challenge).
As part of this broader risk assessment argument, Odom asserted at the hearing on his habeas application that the statute is overbroad because it captures all "people convicted of all sexually-based offenses not just on-line solicitation." But "the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." Packingham , 137 S.Ct. at 1737. As *916 the concurrence in Packingham recognized, the state may legitimately regulate the use of the internet by sex offenders because it is a powerful tool that can be used to commit sex crimes:
Several factors make the internet a powerful tool for the would-be child abuser. First, children often use the internet in a way that gives offenders easy access to their personal information-by, for example, communicating with strangers and allowing sites to disclose their location. Second, the internet provides previously unavailable ways of communicating with, stalking, and ultimately abusing children.... And an abuser can use a child's location posts on the internet to determine the pattern of the child's day-to-day activities-and even the child's location at a given moment. Such uses of the internet are already well documented, both in research and in reported decisions.
Because protecting children from abuse is a compelling state interest and sex offenders can (and do) use the internet to engage in such abuse, it is legitimate and entirely reasonable for States to try to stop abuse from occurring before it happens.
Packingham , 137 S.Ct. at 1739-40 (Alito, J., concurring) (footnotes omitted). Accordingly, statutes requiring all sex offenders to register online identifiers (as opposed to only sex offenders convicted of online solicitation) have been held to be sufficiently tailored to survive intermediate scrutiny. See , e.g. , Shurtleff , 628 F.3d at 1220 (upholding Utah's statute "requiring all sex offenders living in Utah to register their 'internet identifiers' and the corresponding websites with the state").
We hold that the Article 62.0551(a) does not burden substantially more speech than is necessary to further the State's legitimate interests. Turner Broad. Sys. , 512 U.S. at 662, 114 S.Ct. 2445. Accordingly, Odom fails to establish that the statute is facially unconstitutional as substantially overbroad in violation of the First Amendment.
Conclusion
We affirm the trial court's ruling denying the pretrial application for a writ of habeas corpus.
Justice Massengale, concurring in judgment only.

See Doe v. Harris , 772 F.3d 563, 576 (9th Cir. 2014) (California statute requiring sex offenders to disclose internet identifiers was content neutral and subject to intermediate scrutiny); Shurtleff , 628 F.3d at 1223 (Utah statute requiring sex offenders to report internet identifiers was subject to intermediate scrutiny as "content-neutral regulation" because it "says nothing about the ideas or opinions that [registrant] may or may not express" and was aimed at aiding police in solving crimes rather than suppressing the expression of unpopular views); Does # 1-5 v. Snyder , 101 F.Supp.3d 672, 690, 700 (E.D. Mich. 2015) (Michigan statute requiring sex offenders to report "electronic mail or instant message address, or any other designations used in internet communications or postings" was content neutral because provisions "restrict speech without reference to the speech's content"); Doe v. Nebraska , 898 F.Supp.2d 1086, 1093, 1107-08 (D. Neb. 2012) (Nebraska statute requiring sex offenders to disclose "remote communication device identifiers, addresses, domain names, and Internet and blog sites used" was subject to intermediate scrutiny); White v. Baker , 696 F.Supp.2d 1289, 1307-08 (N.D. Ga. 2010) (Georgia statute requiring sex offenders to produce their email addresses, usernames, and password was subject to intermediate scrutiny); Minnis , 409 Ill.Dec. 60, 67 N.E.3d at 288 (Illinois statute requiring sex offenders to disclose internet identifiers was "content neutral and, accordingly, is subject to intermediate scrutiny"); Harris v. State , 985 N.E.2d 767, 775 (Ind. Ct. App. 2013) (Indiana statute requiring sex offenders to register "[a]ny electronic mail address, instant messaging username, electronic chat room username, or social networking web site username" was content neutral and subject to intermediate scrutiny); see also Doe v. Prosecutor, Marion Cty., Ind. , 705 F.3d 694, 698 (7th Cir. 2013) (provisions of Indiana statute prohibiting certain sex offenders from using social networking sites, instant messaging, or chat rooms that are accessible to minors, was "content neutral because it restrict[ed] speech without reference to the expression's content" and was therefore subject to intermediate scrutiny); State v. Packingham , 368 N.C. 380, 777 S.E.2d 738, 745 (2013) (North Carolina statute banning use of social networking sites by sex offenders was subject to intermediate scrutiny). rev'd on other grounds by Packingham v. North Carolina , --- U.S. ----, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017) (invalidating statute because, even assuming that it was content neutral, statute failed to meet intermediate scrutiny).
Odom does not cite any contrary authority, but we have located a federal district court memorandum opinion and order concluding that Alabama's reporting requirement was a content-based restriction. See Doe # 1 v. Marshall , No. 2:15-CV-606-WKW, 2018 WL 1321034, at *12 (M.D. Ala. Mar. 14, 2018). Marshall is distinguishable because the district court based its holding on the fact that the Alabama statute, in an attempt to make the reporting requirements less restrictive, added a carve-out for identifiers "used exclusively in connection with a lawful commercial transaction." Id. at *15-16. The district court concluded that adding this carve-out "privileges commercially related speech over other subjects of expression" and "transforms the internet reporting requirement into a content-based restriction[.]" Id. at *15. There is no similar carve-out in the Texas statute.

To the extent that Odom asserts that, although the statute is content-neutral, heightened scrutiny should apply because sex offenders comprise a suspect class, this is an equal protection argument that Odom affirmatively waived. Moreover, Odom cites no case authority supporting this assertion and fails to address the various cases holding that convicted sex offenders are not a suspect class. See, e.g., Barker v. State, 335 S.W.3d 731, 736 (Tex. App.-Houston [14th Dist.] 2011, pet. ref'd) ; Hines v. Jenks , 89 Fed. App'x 189, 191 (10th Cir. 2004) ; United States v. LeMay , 260 F.3d 1018, 1030 (9th Cir. 2001) ; Cutshall v. Sundquist , 193 F.3d 466, 482 (6th Cir. 1999).

In Harris , the Ninth Circuit enjoined provisions of the Californians Against Sexual Exploitation Act requiring sex offenders to report "[a] list of any and all Internet identifiers established or used by the person" and "[a] list of any and all Internet service providers used by the person," as well as requiring registrants to send written notice to law enforcement within 24 hours of any additions or changes to this information. 772 F.3d at 567-68 (quoting Cal. Penal Code §§ 290.014(b), 290.015(a)(4), (5) ). The Ninth Circuit held that California's sex offender registration statute "unnecessarily chills protected speech in at least three ways: the Act does not make clear what sex offenders are required to report, there are insufficient safeguards preventing the public release of the information sex offenders do report, and the 24-hour reporting requirement is onerous and overbroad." Id. at 578. Harris is distinguishable because none of those concerns apply to Article 62.0551(a). First, unlike the California statute, Odom does not assert that Article 62.0551(a) 's reporting requirement is ambiguous. See id. at 578-79. Second, the Ninth Circuit was concerned that the California statute provided law enforcement entities with broad discretion to release collected online identifying information to the public. See id. at 579-81. Texas's statute does not contain a similar provision and does not make collected online information available to the public. Finally, the Ninth Circuit found that the California statute's requirement that sex offenders register within 24 hours of using a new internet identifier was particularly onerous and noted that it was shorter than the time given in other jurisdictions. See id. at 581-82. The court noted, as an example, that Georgia's statute requires registrants to provide update information within 72 hours. See id. at 581. Article 62.0551, in contrast, requires reporting on new identifiers within seven days.

For instance, New York allows its criminal justice services division to confidentially release registrant's internet identifiers to authorized internet entities upon request to prescreen or remove sex offenders from their services. See N.Y. Correct. Law § 168-b(10) ; see also Fla. Stat. § 943.0437 (authorizing Florida department of law enforcement to release internet identifiers to social networking sites for screening); S.C. Code § 23-3-555(c) (authorizing South Carolina law enforcement division to release internet identifiers to "interactive computer service[s]" for screening).